No. 12,013.

## DAWSON v. SHIRK.

PRACTICE.—*Jury Trial.—Verdict.*—A party upon whose demand, resisted by the other party, a cause in equity is tried by jury which should have been tried by the court, will not be permitted afterwards to question the mode of trial, and as to him the verdict will be treated in all respects as if the case were at law, and judgment entered accordingly.

SAME.—*Special Verdict.—Judgment.—Damages.*—Where a special verdict states the amount of damages found for the plaintiff, in the event that, upon the facts found, the law is for the plaintiff, and no data are furnished by the verdict from which the court can, by computation, ascertain the damages, judgment, if for the plaintiff, must be for the damages found by the jury. *Aliter*, if there be data found by the verdict, which will enable the court to compute the proper damages.

From the Howard Circuit Court.

*F. M. Trissal, M. Bell* and *W. C. Purdum*, for appellant.

*R. Hill* and *R. N. Lamb*, for appellee.

MITCHELL, C. J.—This action was brought by Dawson against Shirk to recover the value of a promissory note, which he alleged belonged to him, and which it was averred Shirk had obtained possession of through one Kinsey, who was made a party and against whom default was taken.

It was averred that Dawson and Kinsey had become sureties for one Burroughs, and that, as the proceeds of the sale of certain real estate upon which they had taken an indemnity mortgage, the note in question had become the property of Dawson. It was also averred that he had paid the entire debt upon which they had been jointly bound.

It was averred that the note remained in the possession of Kinsey; that he pledged it to Shirk as collateral security for an individual debt, and that Shirk had notice of Dawson's rights at the time he received it.

The complaint was in three paragraphs, two of which set up the foregoing facts, with much other incidental matter. The third was the common count for money, personal property and choses in action had and received, to the plaintiff's use. After issue joined, the appellee moved the court that all questions raised on the issues made on the first paragraph be tried by the court or referred to a master. This motion was overruled. The case was thereupon submitted for trial to a jury without further objection, upon which the court made an order, of its own motion, that the jury return a special verdict. At the proper time the jury returned a special verdict which was contained in two separate papers, one of which was entitled "Plaintiff's," the other "Defendant's." After setting out the facts in each paper, not altogether consistently, each concluded substantially as follows: "If, upon the facts aforesaid, the law is with the plaintiff, then we, the jury, find for the plaintiff and assess his damages at $190.40. If, upon said facts, the law of the case is with the defendant Shirk, then we find for the defendant Shirk." Both papers were received as the verdict of the jury without objection. Thereupon the plaintiff moved for judgment on the special verdict for $1,408, and the defendant moved for judgment for costs. Plaintiff's motion was overruled, whereupon he moved to set aside the concluding part of the verdict which assessed his damages at $190.40, and asked to have a new jury empanelled for the purpose of assessing the amount of the recovery, specifying in his motion that the new jury, when called, should be instructed to assess the amount of his damages at $1,408. This motion was also overruled, and judgment was rendered for plaintiff on the special verdict for $190.40 and for costs, to which the defendant Shirk excepted.

Dawson prosecutes this appeal, and assigns for error the overruling of his several motions above set out.

It is insisted by appellant's counsel, that, upon the facts found, the conclusion necessarily follows that the plaintiff's damages should have been assessed at $1,408, and that judgment should have been rendered accordingly. The material facts found may be summarized thus: "Plaintiff's:"

1. On June 24th, 1875, Dawson and Kinsey, being sureties for Burroughs, took from him an indemnifying mortgage on certain real estate.

2. Dawson was compelled to pay the entire security debt, which amounted, when paid, to $2,920.81.

3. Previous to and during the year 1878, Kinsey became indebted to Dawson for money paid to his use and for property sold, in the sum of $2,522.25.

4. In and before September, 1876, Dawson and Kinsey had executed their notes in satisfaction of the indebtedness for which they were liable as the sureties of Burroughs, and at the September term, 1876, of the Hamilton Circuit Court, they foreclosed their indemnity mortgage, taking a decree in which it was adjudged that the land should be sold to pay the sum of $1,216.71, that Dawson had paid as surety, and $1,425.93 that had been paid by both Dawson and Kinsey. That the land was subsequently sold on the decree thus taken, bid in, and subsequently a title obtained by them jointly under this sale. That afterwards, on the 1st day of February, 1878, they sold and conveyed the land to William C. Duckwell for $2,-500, who paid to Dawson $500 cash, and in payment of the balance transferred to them a note on John Duckwell for $1,-870, dated May 3d, 1876, with interest at 9 per cent. from May 3d, 1877. That this note was left in the possession of Kinsey for the benefit of himself and Dawson, and that Kinsey, without the knowledge or consent of Dawson, and at the request of Shirk, in March, 1878, induced Duckwell to execute a renewal note for two thousand dollars, bearing 8 per cent. interest, which renewal note Kinsey, without authority,

transferred to Shirk as a collateral security for his debt to him. That Shirk, at the time of accepting the transfer of the note, knew that Dawson had an interest in it, and that in the month of April, 1879, he collected the note and applied to Kinsey's debt the proceeds, amounting to $2,160.

9. That Dawson has realized from the proceeds of property transferred to him by Kinsey, and from payments, the sum of $1,364, and that Kinsey is indebted to him on transactions outside of the Duckwell note in the sum of $2,225.

A summary of so much of the special verdict as is material, entitled " Defendant's," may be stated as follows:

1. Previous to June, 1876, Dawson and Kinsey were cosureties for Burroughs, and held an indemnifying mortgage from him on eighty acres of land.

2. In June, 1876, they executed their joint notes for $2,-920.81 in discharge of the indebtedness for which they were sureties, to one Wilson. On August 15th, 1878, Dawson paid and discharged the joint debt to Wilson by executing his own notes secured by mortgage.

3. In 1876 Kinsey and Dawson foreclosed their indemnity mortgage, obtained a sheriff's deed for the land, and in February, 1878, sold it to Duckwell, receiving cash and note from him as described.

4. Dawson received the $500 which was paid on the sale of the land.

5. The Duckwell note was renewed and transferred to Shirk as described.

6. Shirk had notice that Dawson claimed a half interest in the Duckwell note at the time he received it.

7. At the time Shirk received the Duckwell note he credited $2,000, the amount of it, to Kinsey's debt.

8. In April or May, 1878, Kinsey transferred to Dawson certain notes or judgments on one Cook, of Rush county, in part payment of his indebtedness to him on account of the Duckwell note, upon which judgments Dawson afterwards collected $864.

9. At the time the Cook judgments were transferred to Dawson, he, Dawson, was only claiming one-half the Duckwell note, and he had notice at that time that it had been transferred to Shirk.

12. Kinsey, at the time of the transfer of the Duckwell note to Shirk, had no authority from Dawson to make the transfer.

15. That before the commencement of this suit Dawson, by his attorney, demanded of Shirk one-half the amount of the Duckwell note, and only claimed to own one-half the note up to and after the beginning of this suit.

The foregoing are all the facts material to be considered.

It is suggested by counsel for appellant that as the case, in some of its aspects, at least, is of equitable jurisdiction, the court should have treated the special verdict as advisory merely, and rendered judgment upon it as in chancery cases. Where, however, parties have submitted a cause to a jury for trial, as a law case, even though the cause is in other respects of equitable cognizance, it has been held that the verdict will be treated in all respects as in a law case. *Summers* v. *Greathouse*, 87 Ind. 205. Especially should that be so in this case, after the appellee made an unsuccessful effort to secure a trial as in chancery.

Section 565, R. S. 1881, provides: "Where the verdict is special, or where there has been a special finding on particular questions of fact, the court shall render the proper judgment."

In the case of *Mitchell* v. *Geisendorff*, 44 Ind. 358, it was held that a judgment for $8,000, rendered by the court on a special verdict returned by a jury, in which the amount of the recovery was assessed at $175, was erroneous. It was there said, without further explanation: "The 'proper judgment' here named means a judgment on the verdict and can mean nothing else."

Of special verdicts, it is said in 2 Tidd's Practice, 901:

"And the court will not alter a verdict, unless it appear on the face of it, that the alteration would be according to the intention of the jury."

In the case of *Reid* v. *State, ex rel.*, 58 Ind. 406, the court said: " Different agencies may be entrusted with the power of determining the facts in controversy between litigants, and stating the proper conclusions thereon. A jury, a referee, or the court may perform the duty; but where the duty in the premises, imposed upon any one of these agencies in a given cause, is general, the entire duty must be performed by that agency. A jury must find a verdict upon which a judgment can be rendered." It was there held that because the court had added $419.57 to the amount found by a referee, error had been committed, the reason assigned being that the report did not furnish the court with data upon which to render a judgment differing in amount from that contained therein. It would seem as the result of the authorities that a proper construction of the statute requires that if data are given in a special verdict or special finding of facts, from which it clearly appears that the amount assessed by the jury is the result of an error in computation, or grows out of some omission, the proper judgment to be rendered by the court would be the amount which a correct computation made from the data furnished would indicate. *Sanders* v. *Scott*, 68 Ind. 130; *Case* v. *Colter*, 66 Ind. 336; *Hall* v. *Harlow*, 66 Ind. 448; *Medler* v. *Hiatt*, 14 Ind. 405.

Where a special verdict or special finding of facts is returned, nothing remains for the consideration of the court except to render the proper judgment on the facts found according to the law, and when the jury assess the amount of the recovery, the data furnished and facts found must be so inconsistent with the amount assessed as that the two can not be reconciled in order to justify the court in disregarding the assessment. Before a judgment can be rendered for an amount different from that assessed by the jury the conclu-

sion must be irresistible from the facts and data given, that an error in computation, or an omission, growing out of a misconception of the relation to each other of the several facts specifically found, has occurred.

It is conceded by appellant's counsel, that if Dawson was entitled to but one-half the amount of the Duckwell note, the amount assessed was correct. The jury did not specifically find whether he was the owner of one-half or the whole of the note. As to that the special verdict is equivocal. Facts are stated which tend to support either view. Whether Dawson was the owner of the whole or one-half of the note, was a fact in dispute. Shirk answered a subsequent ratification of the transfer by him. From the facts stated and from those upon which the verdict is silent, the jury made the deduction of fact that he owned one-half, and their assessment was made accordingly.

To have rendered a judgment for a different amount would have involved a deduction of fact by the court different from that made by the jury. This the court had no right to do. Its sole duty was to make deductions of law from facts specifically and unequivocally found, and as in view of the equivocal findings of the jury, it could not be said as a conclusion of law that the appellant owned the whole note, the ruling of the court was right. It may be said, however, if it were conceded that Dawson owned the whole note, that we have been unable to discover any certain specific data in either or both the special verdicts upon which the amount of the judgment asked could have been predicated. To make the amount, data must be assumed outside of the finding.

Judgment affirmed, with costs.

Filed May 25, 1885.