**ENGLISH COAL CO., INC.,**
**Defendant-Appellant,**

v.

**Robert A. DURCHOLZ,**
**Plaintiff-Appellee.**

**No. 1–780A179.**

Court of Appeals of Indiana,
First District.

June 9, 1981.

Rehearing Denied July 7, 1981.
Transfer Denied Oct. 13, 1981.

John D. Clouse, Michael C. Keating, Laurie A. Baiden, Evansville, for defendant-appellant.

Michael H. McDermott, McDermott, Fischer & Huebner, Jasper, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF CASE

English Coal Co., Inc., (English Coal) appeals from a judgment for seventy-five thousand dollars awarded to Robert C. Durcholz pursuant to an action he brought on a strip mining contract and from a negative judgment on its own counterclaim. We affirm.

## FACTS

English Coal was incorporated in 1976 under the laws of New Mexico by Walter English, James Julian, and Alexander Hutchings for the purpose of holding mineral leases in New Mexico. English Coal acquired a mineral lease to a farm in Warrick County, Indiana, and advertised for a strip miner with the ability to mine 10,000 tons of coal per month. S. J. Groves & Sons Co. of Warsaw, Missouri, contemplated mining the property in partnership with English Coal and sent field engineer George Kuberra and other employees to investigate the site. They spent a week drilling to determine the amount, location, and depth of the coal. English was present during the drilling, and Kuberra helped him prepare a drilling map based on the information obtained. English had no prior experience in strip mining *per se*, but he had previous experience as a coal broker. Negotiations with S. J. Groves & Sons Co. did not result in a contract.

English also negotiated with Durcholz, a high school dropout and self-employed excavator who had been involved with earth moving but had never done any strip mining. On January 15, 1977, English Coal and Durcholz entered into a written contract for strip mining the coal on the farm in Warrick County. The brief final contract which was drawn up by English incorporating changes requested by Durcholz and which provided essentially that Durcholz would mine the coal and English Coal would market it appears as follows:

## "OPERATING AGREEMENT

"This agreement between Robert Durcholz of Huntingburg, Indiana, hereinafter known as the Stripper and the English Coal Company, Inc. hereinafter known as the Operator, regarding the stripping of coal mining lease in Warrick County belonging to Charles McDonald. This property according to drill information indicates an average of an access [sic] 4,000 tons per acre.

"Stripper agrees to mine process and load coal into trucks and to reclaim land in compliance within the existing state reclamation guidelines established for return to row crop. Stripper will supply his own equipment and operating people, and all other necessary paraphernalia necessary to stripping operation. Stripper also agrees to open no competing operations in Indiana.

"Operator will market all coal, and payment will be made to Stripper at a rate of $8.00 per ton on any coal netting less than $14.00 at the scale; everything over $14.00 will be split between Operator and Stripper on a 50–50 basis. Scale price is derived after royalty is paid to land owner and trucking expenses deducted, which will vary with destination of coal. Formula for payment to Stripper is to be as the following examples:

Coal sold netting $11.00 at the scale, Stripper receives $8.00 per ton.

Coal sold netting $18.00 at the scale, Stripper receives $10.00 per ton.

"Payments are to be made to the Stripper within five (5) days of receipt of payment to Operator. This contract is

for the duration necessary to mine out   the McDonald lease.

"This agreement entered into this date   15 JAN 77                .

Signed by s/s Walter L. English
                OPERATOR
          Walter L. English, Pres.
          English Coal Comp., Inc.

Signed by s/s Robert A. Durcholz
              STRIPPER
          Robert Durcholz

STATE OF INDIANA        ) SS:
COUNTY OF Vanderburgh   )

"Before me, a Notary Public in and for said County, personally appeared Stripper, Robert Durcholz and Operators, English Coal Company, Inc., above named who acknowledged the signing of this Agreement.

My Commission expires:  6-2-80    s/s George A. Howard
                                     Notary Public"

---

Neither party consulted an attorney, although Durcholz discussed the contract with an officer at a local bank who suggested Durcholz get into the contract what he believed to be English's guarantee that the ninety-five acres involved contained at least four thousand tons of coal per acre. This guarantee Durcholz believed to be represented by the following provision: "This property according to drill information indicates an average of an access [sic] 4,000 tons per acre."

Durcholz began mining on February 1, 1977, but hit rock at each pit he opened. He borrowed $385,000 to purchase additional equipment which frequently broke down. In June 1977 Durcholz ceased operation. He had received a total of $56,455.68 from English Coal for approximately 18,442 tons of coal mined. He claimed that he should have received $123,536 for the mined coal, but English Coal deducted approximately $34,000 for funds it had expended on behalf of Durcholz for bills, equipment, and services.

Durcholz brought this action against English Coal in three counts: (1) for an accounting and damages for breach of contract, (2) for damages for breach of contract, and (3) for punitive damages for fraud. English Coal counterclaimed for (1) breach of contract, (2) negligent misrepresentation, and (3) fraud. After trial to a jury a general verdict was returned in favor of Durcholz for $75,000 and against English on its counterclaim. Judgment was entered thereon in favor of Durcholz for $75,000 plus costs. English Coal appeals and Durcholz cross-appeals.

## ISSUES

In the interest of judicial economy we have reorganized the questions raised by the parties into the following issues:

I. Was it error for the trial court to deny English Coal's Motion for Summary Judgment and Striking of the Demand for Trial by Jury?

II. Was it error to admit certain testimony or parol evidence?

III. Was it error to admit evidence of English Coal's involvement in other lawsuits?

IV. Did the trial court err in failing to give several of English Coal's instructions?

V. Was the evidence sufficient to support the verdict or was the verdict contrary to law?

VI. Were the damages insufficient as a matter of law?

*Issue One*

English Coal argues that the trial court erred in refusing to grant its Motion for

Summary Judgment and Striking of the Demand for Trial by Jury. The essence of appellant's specifications of error are (1) that the contract was not ambiguous, hence not in need of construction, and (2) that the fraud alleged was based on a promise to do something in the future, hence was not actionable fraud. Because no actionable fraud was shown and the contract was clear and unambiguous on its face, argues English Coal, it was entitled to summary judgment under the contract as a matter of law.

■ The standard of review applied by this court requires that we affirm a trial court's action if it can be sustained on any legal theory. *Llewellyn v. Beasley*, (1981) Ind.App., 415 N.E.2d 789. We do not presume error by the trial court, and the burden of proving that reversible error occurred is on the appellant. *N. Y. Central Ry. Co. v. Milhiser*, (1952) 231 Ind. 180, 106 N.E.2d 453, *reh. denied* 108 N.E.2d 57; *American Optical Co. v. Weidenhamer*, (1980) Ind.App., 404 N.E.2d 606 (transfer pending).

■ The test for the granting of a motion for summary judgment requires, first, that there be no genuine issue, or dispute, as to material facts in the case. *See*, Ind.Rules of Procedure, Trial Rule 56(C). To determine whether such issue exists, the court will accept as true all facts alleged by the nonmoving party and resolve all doubts against the moving party. *Kendrick Memorial Hospital, Inc. v. Totten*, (1980) Ind.App., 408 N.E.2d 130. In the instant case Durcholz alleged that English Coal, knowing full well that such representations were untrue, had *guaranteed* him that there was an average of 4,000 tons of coal per acre and that there would be no problem with rock, other than in one particular location, in strip mining the farm. The trial court correctly rejected appellant's contentions that these representations concerned future rather than existing facts. Summary judgment is not an appropriate means of resolving questions of credibility of evidence or its weight, *American States Insurance Co. v. State ex rel. Jennings*, (1972) 152 Ind.App. 422, 284 N.E.2d 873, or

even conflicting inferences which may be drawn from undisputed facts. *Moll v. South Central Solar Systems, Inc.*, (1981) Ind.App., 419 N.E.2d 154; *Hayes v. Second National Bank of Richmond*, (1978) Ind. App., 375 N.E.2d 647; *trans. denied.* Thus, even were the court to surmise that the nonmoving party were unlikely to prevail at trial, it would not be authorized to grant summary judgment. *Wozniczka v. McKean*, (1969) 144 Ind.App. 471, 247 N.E.2d 215, *trans. denied; Barbre v. Indianapolis Water Co.*, (1980) Ind.App., 400 N.E.2d 1142, *trans. denied.* It is only after the court has determined that there is no genuine dispute as to any material fact that it will take the second step in the summary judgment proceeding and determine whether the moving party is entitled to judgment as a matter of law. *See, e. g., Moll v. South Central Solar Systems, Inc., supra.* Here the trial court did not err in denying summary judgment on count III of Durcholz's complaint where the facts showed a good faith dispute upon the issue of fraud.

■ We reach the same conclusion with regard to the trial court's denial of summary judgment on the breach of contract counts. English Coal alleges that the trial court erred in refusing to grant summary judgment in its favor on these counts because the contract was unambiguous, hence in need of no construction, and that it was entitled to summary judgment upon the contract as a matter of law. We do not agree.

Even if the court had determined that the contract was clear and unambiguous on its face, the fact that each party contended that the other party had breached the contract would be reflective of a dispute as to a genuine issue of material fact in the counts based on breach of contract. The trial court did not err in denying English Coal's motion for summary judgment upon counts I and II.

■ English Coal next argues that the trial court erred in failing to strike English Coal's own demand for a jury trial as to count I of Durcholz's complaint be-

cause it was an action for an accounting which is an equitable proceeding in which a jury trial is unavailable. Aside from citing two Indiana cases for the proposition that an action for an accounting is an equitable proceeding, English Coal cites no authority or makes no argument to the effect that submission of this cause to a jury was error of such magnitude as to have denied him either a fair trial or due process of law. Durcholz counters that the law in Indiana holds that a party who has demanded a jury trial in a case in which some of its aspects were triable in equity will not be permitted afterwards to question the mode of trial, citing *Dawson v. Shirk*, (1885) 102 Ind. 184, 1 N.E. 292. He notes also that Ind.Rules of Procedure, Trial Rule 38(D) provides that "[a] demand for a trial by jury made as herein provided may not be withdrawn without the consent of the other party or parties." Durcholz neither objected to English Coal's original demand for a jury trial nor consented to its motion to strike its demand for a jury trial which was made three days prior to trial. Furthermore, from the record it is apparent that the trial court submitted the cause to the jury on the issues of fraud and breach of contract, issues clearly triable by jury in Indiana. The character of an action is determined by its substance, not its caption or formal denomination. *McQueen v. State*, (1979) Ind., 396 N.E.2d 903; *Krieg v. Glassburn*, (1981) Ind. App., 419 N.E.2d 1015. English Coal has not convinced us that the trial court erred in refusing to strike its demand for a jury trial.

*Issue Two*

English Coal contends that the trial court erred in admitting parol evidence and certain other testimony because the contract was unambiguous and in need of construction only by the court, not by a jury.

⬛ We agree with appellant that as a general rule the construction or interpretation of a contract is a question of law entrusted to the trial court. *Clyde E. Williams and Associates, Inc. v. Boatman*, (1978) Ind.App., 375 N.E.2d 1138, *trans. de-*

nied. In interpreting a written contract, the court's purpose is to give effect to the intent of the parties at the time the contract was made and as reflected by the language they used. *Shahan v. Brinegar*, (1979) Ind.App., 390 N.E.2d 1036. In determining that intent the court must consider the surrounding circumstances which existed at the time the contract was made:

> "The court should consider the nature of the agreement, together with all the facts and circumstances leading up to the execution of the contract, the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract. *Standard Land Corporation of Indiana v. Bogardus*, (1972) 154 Ind.App. 283, 289 N.E.2d 803."

*Id.*, 390 N.E.2d at 1041. Additionally, in Indiana the "four corners" rule has long been the law applied in the construction of written instruments. *Hauck v. Second National Bank of Richmond*, (1972) 153 Ind. App. 245, 286 N.E.2d 852, *trans. denied* (1973).

> "This rule provides that in construing written instruments, the language of the instrument, if unambiguous, determines the intent of the parties such that parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress, or undue influence."

*Lippeat v. Comet Coal & Clay Co.*, (1981) Ind.App., 419 N.E.2d 1332, 1335. Parol evidence in the case at bar would clearly be admissible, therefore, not only to show the facts and circumstances existing at the time the contract was made and any evidence of fraud, but also where the contract or any of its terms were ambiguous.

⬛ The test for determining whether a contract term is ambiguous is whether reasonably intelligent persons could differ as to its meaning. *Huntington Mutual Ins. Co. v. Walker*, (1979) Ind.App., 392 N.E.2d 1182, *trans. denied; Shahan v. Brinegar*, *supra*. Where the terms of a contract are ambiguous and must be determined by extrinsic evidence, construction of the con-

tract is for the jury. *Brumfield, Tr. v. State ex rel. Wallace*, (1934) 206 Ind. 647, 190 N.E. 863. We agree with Durcholz that the contract was ambiguous at the very least with respect to the meaning of the term "process" and the sentence, "Stripper will supply his own equipment and operating people, and all other necessary paraphernalia necessary to stripping operation." Reasonably intelligent persons could differ in the meanings they would assign to these provisions of the contract, even as did Durcholz and English Coal. It is not clear from the language contained within the four corners of the instrument itself whether "process" included crushing and weighing the coal or whether a crusher and scales and the labor to operate them were intended to be provided by Durcholz or by English Coal. English Coal seems to agree that "process" must be defined by extrinsic evidence when it argues that the term is a technical one, to be defined by coal industry standards, even though it is used in a contract drawn up between two self-proclaimed novices in the coal mining business. Ambiguities in a contract are to be strictly construed against the party who prepared the contract, *Colonial Mortgage of Indiana, Inc. v. Windmiller*, (1978) Ind.App., 376 N.E.2d 529. Moreover, evidence of Durcholz's requested insertion of the sentence concerning the amount of coal indicated by the drill map was specifically related to the allegations of fraud. Clearly the evidence complained of by appellant in each instance was admissible either as background material explaining the intent of the parties when they entered into the contract, as evidence of fraud, or as evidence of the meaning to be ascribed to the ambiguous provisions of the contract.

▓▓▓ The admissibility of evidence is within the sound discretion of the trial court. *Tapp v. State*, (1980) Ind.App., 406 N.E.2d 296. This court will reverse a trial court for abuse of that discretion only when the trial court's action is clearly erroneous and against the facts and circumstances before the trial court or reasonable inferences to be drawn therefrom. *Dunbar v. Dunbar*, (1969) 145 Ind.App. 479, 251 N.E.2d

468. The trial court did not abuse its discretion in overruling appellant's objections to testimony concerning the first paragraph of the parties' contract, the crusher and scales or labor to operate them, or the terms of the agreement themselves.

*Issue Three*

▓▓▓ English Coal alleges error in the court's admitting irrelevant evidence concerning whether or not Walter English had ever been involved in a lawsuit as a result of his blasting activities. Now appellant also adds that this evidence should have been excluded because its probative value was outweighed by its prejudicial effect. Objections raised on appeal but different from those asserted at trial will not be considered by this court. *McDonald v. State*, (1975) 264 Ind. 477, 346 N.E.2d 569.

▓▓▓ The testimony to which appellant objects is set forth in his brief as follows:

" 'Q. Have you ever been involved in any lawsuit that would have been a result of any blasting that would . . .

MR. CLOUSE: To which the defendant objects, Your Honor. That has no bearing on this case.

BY THE COURT: Overruled. Establish the time.

Q. Have you ever been involved in any lawsuit?

A. Yes.

The defendant's objection should have been sustained for the reasons stated at trial, which reasons are here adopted by reference.' (R. 9, 10)"

We find that the question to which appellant objected was not answered, thus appellant can claim no harm from the court's overruling his objection. The testimony following the objection pertained to the fact and time of the blasting and not to any lawsuit. The fact of any blasting operation on the subject property would pertain directly to instant action. Furthermore, we regard the objection as nothing more than an objection as to lack of relevancy which is too general an objection to present any

question for appellate review. *O'Conner v. State*, (1980) Ind., 399 N.E.2d 364. We find no reversible error in the court's admission of the testimony set out above.

*Issue Four*

English Coal contends that the trial court erred in refusing to give its tendered instructions numbered two and four because they were correct statements of applicable law under the facts of the case, no comparable instructions were given, and they were necessary to instruct upon the theory and law of its counterclaim and defense.

English Coal's tendered instruction number two was an instruction concerning negligent misrepresentation, a tort which appellant confesses to be as yet unrecognized in Indiana. Although appellant invites this court to adopt judicially this cause of action, we decline to delve any further into this issue. The trial court did not err in refusing appellant's instruction number two.

Appellant's tendered instruction number four is a brief statement regarding fraud. It reads as follows: "Fraud is never presumed, but the burden rests upon one charging fraud to make it out by clear and convincing evidence." (Record at 817.) English Coal gleaned the wording of this instruction from *Wallace v. Mattice*, (1889) 118 Ind. 59, 20 N.E. 497. The mere fact that certain language is used in a judicial opinion, however, does not necessarily make it proper language for a jury instruction. *Jacks v. State*, (1979) Ind., 394 N.E.2d 166; *Weekley v. State*, (1981) Ind.App., 415 N.E.2d 152. We must reiterate what Judge Lybrook wrote in *State Farm Mutual Auto Ins. Co. v. Shuman*, (1977) Ind.App., 370 N.E.2d 941, 955, *trans. denied*, when faced with the same language from *Wallace*: "To state that fraud is never presumed means simply that fraud, as a matter of fact, cannot be taken for granted and that it must be proved by the party making the charge." This part of the content of appellant's tendered instruction was adequately covered by the court's instruction number seventeen, which reads as follows:

"In order to recover in an action for fraud, the plaintiff has the burden of proving the following propositions:

"That the defendant made false statements representing them to be statements of existing fact.

"That the defendant made the statements, knowing them to be false, or that he made the statements recklessly, without knowledge of their truth or falsity.

"That the statements were made for the purpose of inducing plaintiff to act upon them.

"That the plaintiff did rely and acted upon the statements made.

"That as a result plaintiff sustained damage.

"If you find from a consideration of all the evidence that these propositions have been proved, your verdict should be for the plaintiff. However, if you find from a consideration of all the evidence that any of these propositions have not been proved, your verdict should be for the defendant."

The court's instruction number eleven also stated, *inter alia*: "The plaintiff has the burden of proving by a preponderance of the evidence the material allegations of his complaint." This instruction not only adequately placed the burden of proving fraud on Durcholz but also set out the applicable standard of proof in civil cases as "by a preponderance of the evidence." *State Farm Mutual Auto Ins. Co. v. Shuman, supra.* We note that English Coal did object to the court's instruction number seventeen as follows:

"The Defendant objects to the Court's Instruction No. 17. The first basis for the objection is that the fraud upon which the jury is instructed arises out of a written contract, which contract should have been construed by the Court not to state actionable fraud, and, therefore, it was not within the province of the jury to consider the question of fraud by the defendant to the plaintiff. Secondly, the defendant objects for the reason that the third Count of Plaintiff's complaint is duplicitous, the first Count essentially

alleging the same actionable facts. Third, as a matter of law, all oral representations made by the parties were merged into the contract sued upon and, again, as a matter of law, fraud was not present in the terms of the contract."

We find nothing in this objection which challenges either the burden of proof as set out in instruction seventeen or standard of proof as set out in instruction number eleven. Refusal of a tendered instruction is not error where the substance of the instruction is adequately covered by other instructions given by the court, *Hoskins v. State*, (1978) 268 Ind. 290, 375 N.E.2d 191, and failure to object specifically to certain language of an instruction at trial precludes the raising of such objection upon appeal. *Ralston v. State*, (1980) Ind.App., 412 N.E.2d 239 (trans. pending); *State Farm Mutual Auto Ins. Co. v. Shuman, supra.* We find no error in the court's refusing to give appellant's tendered instruction number four.

*Issue Five*

English Coal argues that the jury's verdict based on either count II or III was contrary to law because it was not supported by the evidence. The real thrust of English Coal's argument, however, is that the verdict would have been unsupported by the evidence had parol evidence not been admitted by the court. Because we have already determined that reasonable minds could have differed as to the meaning of certain provisions in the contract and therefore that the trial court did not err in admitting parol evidence to clarify the meaning of those terms, we find appellant's allegations of error with regard to the sufficiency question unavailing.

▇▇▇ We note additionally that the verdict returned by the jury was a general verdict in favor of Durcholz and against English Coal. The verdict was returned on forms submitted to the jury upon stipulation by both parties. English Coal submitted no verdict forms to the court, made no objections to those submitted by the court, and did not object to the form of the verdict upon its return by the jury. It may not do so now. Failure to tender a desired

verdict form or to object to the form of the verdict prior to discharge of the jury constitutes waiver of the issue in the absence of a confusing or improper verdict. *Wolff v. Slusher*, (1974) 161 Ind.App. 182, 314 N.E.2d 758; *see also, Indiana State Highway Commission v. Rickert*, (1980) Ind.App., 412 N.E.2d 269 (trans. pending).

▇▇▇ Finally, where a verdict is a general one, we shall let it stand if the evidence is deemed sufficient to sustain any theory of liability. *Ertel v. Radio Corp. of America*, (1974) 261 Ind. 573, 307 N.E.2d 471; *Devine v. Grace Constr. & Supply Co.*, (1962) 243 Ind. 98, 181 N.E.2d 862; *American Optical Co. v. Weidenhamer, supra.* We do not reweigh the evidence and consider only that evidence and the reasonable inferences therefrom which are most favorable to the judgment. Only if the evidence and its inferences are undisputed and lead to a verdict contrary to that reached by the jury will we reverse. *American Optical Co. v. Weidenhamer, supra; Shipley v. City of South Bend*, (1978) Ind.App., 372 N.E.2d 490. Here the evidence both as to the terms of the contract and on the issues of fraud was conflicting. Because the jury chose to believe one party's evidence or testimony rather than another's does not make the verdict contrary to law. We find that there is sufficient evidence in the record or reasonable inferences therefrom to support the jury's verdict.

*Issue Six*

Durcholz on his cross appeal alleges that the $75,000 he was awarded were inadequate as a matter of law because they failed to compensate him for the actual damages he suffered.

▇▇▇ We are bound by a very strict standard of review on questions of inadequate or excessive damages. *Barrow v. Talbott*, (1981) Ind.App., 417 N.E.2d 917. We may not reverse a damage award if it is within the scope of evidence before the trial court, and we shall not reweigh the evidence or judge the credibility of the witnesses who presented it. *Indiana Universi-*

*ty v. Indiana Bonding & Surety Co.,* (1981) Ind.App., 416 N.E.2d 1275. A judgment for damages will be reversed as inadequate only when it is apparent from the evidence that the damages assessed were so small as to convince us that "the trier of fact was motivated by prejudice, passion, partiality, or corruption, or else considered some improper element in arriving at its assessment." *Lindenborg v. M & L Builders & Brokers, Inc.,* (1973) 158 Ind.App. 311, 302 N.E.2d 816, 822. The mere fact that Durcholz thought he was entitled to be more amply compensated for the injuries he incurred does not support his proposition that he is entitled to greater damages as a matter of law. We would point out in addition that the $75,000 award was clearly within the evidence presented and as shown by the demand of $58,006.56 in count I and the $81,600.00 as prayed for in count II of Durcholz's own complaint. Consequently, we must uphold the damages as awarded in this case.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.