AMERICA'S DIRECTORIES
INCORPORATED, INC.,
Appellant–Plaintiff,

v.

STELLHORN ONE HOUR PHOTO,
INC., Appellee–Defendant.

No. 02A03–0409–CV–411.

Court of Appeals of Indiana.

Sept. 8, 2005.

⚷984(5)

Robert J. Palmer, May Oberfell Lorber, South Bend, IN, Randall K. Arndt, Arndt & Ehrhard, Mishawaka, IN, Attorneys for Appellant.

Robert G. Devetski, Barnes & Thornburg, LLP, Elkhart, IN, Attorney for Appellee.

## OPINION

KIRSCH, Chief Judge.

America's Directories Incorporated, Inc. ("ADI") appeals from a judgment in the amount of $230,374.04, awarded to Stellhorn One Hour Photo, Inc. ("One Hour") on One Hour's counterclaim to ADI's breach of contract suit. On appeal, we address the following consolidated and restated issues:

I. Whether the trial court erred in denying ADI's motion for partial summary judgment on its claim that the contract integration clause precluded parol evidence to prove that ADI fraudulently induced One Hour to sign the contracts.

II. Whether the trial court erred in failing to instruct the jury regarding the effect of an integration clause.

III. Whether One Hour's fraud claim was independent from its breach of contract claim.

IV. Whether a compensatory damage claim in the amount of $52,911.42 was an appropriate remedy.

V. Whether the trial court erred in granting damages to One Hour when its president incurred the loss.

VI. Whether the trial court erred in granting punitive damages.

VII. Whether the trial court erred in finding that ADI had litigated frivolous claims under IC 34–52–1–1.

We affirm.

## FACTS AND PROCEDURAL HISTORY

For twenty-three years, Paul Saalfield ("Saalfield") and his wife, Dee, owned and operated One Hour, a small, family-run, photo developing business in Fort Wayne. Saalfield owns three One Hour stores, employs fifteen employees, and runs the day-to-day operations. Saalfield is the president of One Hour, and Dee is the bookkeeper.

ADI publishes and sells advertising for Best Book yellow pages telephone directories, which is one of several advertising and publishing companies owned by Rick Singleton. In 1997, ADI was expanding its business into the Fort Wayne market.

In March 1997, a salesperson from ADI approached Saalfield at one of his stores to inquire whether he would purchase advertising in the new Fort Wayne Best Book ("Best Book"). Saalfield said he was not interested. Five days later, the salesperson returned and again asked Saalfield to purchase an ad. Saalfield again declined. Within the week, the salesperson again called on Saalfield and said that ADI's president, Singleton, wanted to meet with him. Saalfield was flattered by the invitation and agreed to the meeting.

Saalfield, Singleton, and the ADI salesperson attended the meeting, during which Singleton commented on Saalfield's positive reputation in the community. Noting that it would be helpful to tell other potential advertisers that One Hour advertised in the Best Book, Singleton requested, as a favor, that Saalfield purchase an ad. Saalfield again declined, stating that he could not justify the expense. Singleton persisted and stated that because he badly wanted Saalfield's business, the ad would only cost the $600 production fee and $250 in future services, which was designated as "trade." Saalfield finally agreed to place a 1997 ad.

At Singleton's request, the salesperson produced three, double-sided, form contracts, with terms already completed. The first contract reflected Saalfield and Singleton's agreement for the 1997 ad. However, the second and third contracts referenced ad space for Best Book's 1998 and 1999 directories. Saalfield did not read the fine print on the contracts, yet noted that the fee for the 1998 contract was $6,600.00 in cash with $2,400.00 in trade and the fee for the 1999 contract was $9,600.00 in cash with $3,000.00 in trade.

Saalfield questioned why there were three contracts when he had agreed to purchase ad space only in the 1997 book. Singleton gestured for his salesperson to leave and said, "listen[,] I can't do this in front of our sales people. We know that there was no way we could expect you to pay that kind of money," but I need to give my "financing people" a three-year commitment. *Transcript, Vol. 2* at 64–65.[1] Singleton said that he hoped Saalfield would stay with the Best Book for 1998 and 1999, but stated that Saalfield could cancel the second and third contracts at any time. Saalfield signed the three contracts.

ADI distributed the Best Book in September 1997. Thereafter, Saalfield attempted to reach Singleton to cancel One Hour's 1998 and 1999 ads. In January 1998, after Singleton had failed to return any of his phone calls, Saalfield wrote a letter to ADI's vice-president, David Scholtz, notifying him that One Hour had received no benefit from the 1997 ad, and that he did not want to advertise in the upcoming Best Books. Saalfield assumed that he had taken care of the matter.

ADI did not publish a 1998 Best Book. Nevertheless, in July 1998, ADI began sending One Hour monthly bills for that directory. Thinking the bill was a mistake, Saalfield again attempted, unsuccessfully, to cancel the contracts. Late in 1998, Jack Nelson, an ADI sales manager who knew nothing of the conflict, met with Saalfield and discussed the nonpayment of the 1998 bill. After Saalfield explained the situation, Nelson said he would "get this thing cleared up." *Appellant's Appendix* at 406.

In January 1999, ADI faxed to One Hour a three-page "Listing Proof" for the upcoming Best Book. *Appellee's Brief* at 6. Saalfield immediately faxed back the Listing Proof with the following hand-written notation: "NO NO NO DO NOT RUN! *Some*one Call Me! ... Any questions, please see Stephanie or Rick [Singleton]." *Defendant's Exhibit J.* Saalfield also faxed an urgent letter to Singleton on January 14, 1999, requesting a return call and stating that pursuant to their agreement he would not pay for the ad.

In June and July 1999, the second Best Book was distributed containing One Hour's 1997 ad. In January 2000, after another ADI request for payment, Saalfield wrote a letter to an ADI representative, with a copy to Singleton, and asked for a response to his communications.

In May or June 2000, ADI representative Gregg Miller met with Saalfield and inquired about the nonpayment of the bills. Saalfield told Miller that he did not owe any money because he had only committed to run a 1997 ad, and that Singleton could confirm the existence of a verbal agreement to cancel the other two. Miller assured Saalfield that Singleton would call to clear things up. Nevertheless, although Miller repeatedly talked to Singleton about the situation, Singleton never responded to Saalfield's calls.

---

1. The transcript of the trial was transcribed in two volumes, each of which is paginated starting at page 1.

The third Best Book was published in August 2000 and, again, contained an ad for One Hour. Singleton told Miller that he would personally handle the One Hour account. On September 11, 2000, ADI, through Singleton, initiated a breach of contract action against One Hour. The complaint alleged that One Hour owed $250 in trade under the 1997 contract, and a balance of $9,000 for advertising in the 1998 directory, and $12,600 for advertising in the 1999 directory, together with interest, paperwork charges, and attorney's fees—a total of $52,911.42.

After learning of the suit, Saalfield again attempted, unsuccessfully, to contact Singleton. On February 16, 2001, One Hour filed an answer and a counterclaim to ADI's suit, alleging beach of contract and fraud.

On January 16, 2002, One Hour filed a motion for partial summary judgment, not only on ADI's claims, but also on its counterclaim against ADI. After a hearing, the trial court denied the motion. Almost two years later, on December 19, 2003, ADI filed a motion for partial summary judgment arguing that the contract integration clause entitled ADI to judgment as a matter of law. The trial court also denied ADI's motion finding that genuine issues of material fact existed as to what Singleton said or did to induce Saalfield to sign the contracts.

Prior to trial, ADI tendered proposed final instructions, one of which addressed the impact of the integration clause. The trial court, after reviewing party-submitted memoranda addressing the need for the integration clause instruction, refused the instruction. The jury entered a general verdict and awarded One Hour $52,911.42 in compensatory damages and $147,088.58 in punitive damages for a total of $200,000.00. Thereafter, arguing that ADI violated IC 34–52–1–1 by filing a frivolous and groundless action, One Hour filed a Verified Petition for Award of Court Costs and Attorney fees in the amount of $60,259.01. The trial court agreed that ADI's action was groundless and granted One Hour $30,147.50, which represented fees incurred to file the answer but not the counterclaim to ADI's suit. After adding $227.54 in court costs, the trial court ordered ADI to pay $230,374.04. *Appellant's Appendix* at 263. ADI now appeals.

## DISCUSSION AND DECISION

### I. The Integration Clause and Summary Judgment

■ ADI first contends that the trial court erred in denying its motion for partial summary judgment. More specifically, ADI contends that the integration clause found in the three contracts precluded the introduction of parol evidence on the issue of fraud and entitled ADI to judgment as a matter of law in connection with both ADI's complaint and One Hour's counterclaim.

Our standard of review for the denial of a motion for summary judgment is the same as that of the trial court. *Diversified Fin. Sys., Inc. v. Miner*, 713 N.E.2d 293, 297 (Ind.Ct.App.1999). Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (citing Ind. Trial Rule 56(C)). In determining whether the trial court erred in denying summary judgment, we give careful scrutiny to the pleadings and designated materials, construing them in a light most favorable to the non-movant, while also clothing the trial court's decision with a presumption of validity. *Id.*

The ADI form contracts contained the following integration clause:

THIS AGREEMENT IS IRREVOCABLE AND IS THE ENTIRE AGREEMENT BETWEEN PUBLISHER AND PURCHASER FOR THE ABOVE IDENTIFIED ORDER. ONCE SIGNED AND ACCEPTED IT CANNOT BE CANCELED OR ALTERED WITHOUT THE WRITTEN CONSENT OF PUBLISHER. NO VERBAL AGREEMENTS OR REPRESENTATIONS OUTSIDE OF THIS AGREEMENT HAVE BEEN MADE TO OR RELIED UPON BY PURCHASER.

*Plaintiff's Exhibits* 1, 2, & 3. ADI asserts that, because the contracts contained this integration clause, One Hour was prevented from introducing parol evidence to prove that ADI committed fraud.

 The parol evidence rule bars the admission of evidence of oral representations that contradicts a written contract. *See Ruff v. Charter Behavioral Health Sys. of Northwest Indiana,* 699 N.E.2d 1171, 1175 (Ind.Ct.App.1998), *trans. denied.* Generally, where parties have reduced an agreement to writing and have stated in an integration clause that the written document embodies the complete agreement between the parties, the parol evidence rule prohibits courts from considering extrinsic evidence for the purpose of varying or adding to the terms of the written contract. *I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.,* 695 N.E.2d 1030, 1035 (Ind.Ct.App.1998), *trans. denied.* However, the prohibition against the use of parol evidence is by no means absolute. *Id.* Parol evidence may be considered if it is not being offered to vary the terms of the written contract, and to show that fraud, intentional misrepresentation, or mistake entered into the formation of a contract. *Krieg v. Hieber,* 802 N.E.2d 938, 944 (Ind.Ct.App.2004).

Here, Saalfield argues that he was induced to sign the contracts on the basis of fraudulent statements made by Singleton. Because One Hour claims that ADI committed fraud to induce the execution of these contracts, parol evidence is permitted. The trial court did not err in denying summary judgment to ADI because, once introduced, this evidence created a genuine issue of material fact as to what the parties said and did prior to executing the contracts.[2]

### II. Integration Clause Instruction

 Next, ADI contends that the trial court erred in failing to give his tendered instruction on the applicability of an integration clause. We review a trial court's refusal to tender a requested instruction for an abuse of discretion. *City of Terre Haute v. Simpson,* 746 N.E.2d 359, 367 (Ind.Ct.App.2001), *trans. denied.* We will reverse the trial court for failure to give a tendered instruction if: (1) the instruction is a correct statement of law; (2) it is supported by the evidence; (3) it does not repeat material adequately covered by other instructions; and (4) the substantial rights of the tendering party would be prejudiced by the failure to give the instruction. *Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 163 (Ind.Ct.App. 2000) *trans. denied* (2001).

 To address the significance of the integration clause, ADI tendered the following as Requested Final Instruction No. 5:

---

**2.** We also note that prior to trial, ADI responded to One Hour's motion for summary judgment by contending that Singleton's and Saalfield's affidavits raised genuine issues of material fact. The trial court denied One Hour's motion for summary judgment. When considering ADI's motion for summary judgment, those same genuine issues of material fact existed. The trial court did not err in denying ADI's motion for summary judgment.

As a matter of law, any oral representations made by [ADI] to [One Hour] cannot be fraud in the inducement because the Advertising Agreement provision disclaiming reliance on such representations supercedes any prior oral representations.

*Appellant's Appendix* at 67 (citing *Circle Centre Dev. Co. v. Y/G Indiana, L.P.*, 762 N.E.2d 176, 178–79 (Ind.Ct.App.2002), *trans. denied*). In other words, ADI asserts, as a matter of law, that the inclusion of an integration clause in the contracts is definitive proof that all prior statements were integrated into the contract, which prevents Singleton's earlier statements from being used to prove fraud in the inducement.

■ Our supreme court has held that the determination of whether the parties intended a writing to be totally integrated must be based on all the relevant evidence. *Franklin v. White*, 493 N.E.2d 161, 166 (Ind.1986); *see I.C.C. Protective Coatings, Inc.*, 695 N.E.2d at 1035. An integration clause does not control the question of whether a writing is or was intended to be a completely integrated agreement. *Franklin*, 493 N.E.2d at 166; *I.C.C. Protective Coatings*, 695 N.E.2d at 1035. The weight to be given an integration clause will vary depending on the facts and circumstances of each particular case. *Franklin*, 493 N.E.2d at 166; *I.C.C. Protective Coatings*, 695 N.E.2d at 1035.

Requested Final Instruction No. 5 is thus an incorrect statement of law. Not only does the instruction ignore Indiana case law, which holds that the conclusiveness to be given an integration clause varies depending on the facts and circumstances of each case, *Franklin*, 493 N.E.2d at 166, it also disregards the exception to the parol evidence rule, which explicitly permits the introduction of prior statements to prove fraud in the inducement. *Circle Centre Dev.*, 762 N.E.2d at 179.

The trial court did not err in failing to give this instruction to the jury.

### III. Sufficient Evidence of Independent Tort

■ ADI contends that One Hour's claim of fraud is simply a "repackaging" of the breach of contract claim to allow for the recovery of punitive damages. *See Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind.1993) (breach of contract claim may not lead to award of punitive damages); *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct.App.2004), *trans. denied* (2005). Only if the claimant proves that the conduct of the breaching party independently establishes the elements of a common law tort for which punitive damages are allowed may the claimant receive punitive damages. *Tobin*, 819 N.E.2d at 86. "Thus, a claimant who brings both a breach of contract and a fraud claim must prove that (1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Id.; Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind.Ct. App.2000).

■ Actual fraud exists when all of the following elements are fulfilled: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) causing the claimant to rely upon the misrepresentation to the claimant's detriment. *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 667 (Ind.Ct.App.2002), *trans. denied; Abbott v. Bates*, 670 N.E.2d 916, 923 n. 4 (Ind.Ct. App.1996). A knowing misstatement of facts that causes a signing of a writing is fraud. *Guarantee Trust Life Ins. Co. v. Palsce*, 641 N.E.2d 1266, 1269 (Ind.Ct.App. 1994), *trans. denied* (1995).

■ We find that One Hour's fraud claim is not merely a repackaged version

of its breach of contract claim. In its contract claim, One Hour alleged, in part, that it allowed ADI to use One Hour's name to market Best Book, and, in exchange, received the 1997 ad at cost and obtained the right to cancel the 1998 and 1999 contracts at any time. The breach arose when ADI would not allow One Hour to cancel the 1998 and 1999 contracts but continued to use its name in advertisements.

By contrast, in its claim of fraud, One Hour alleged that Singleton made the following fraudulent statements to induce Saalfield to sign the 1998 and 1999 contracts: (1) that One Hour could cancel the 1998 and 1999 contracts at any time with just a phone call, although Singleton never intended to cancel the contracts; (2) that Singleton was going to use One Hour's good name to stimulate ad sales of Best Book, when Singleton had no intention of using One Hour's ad for this purpose; (3) that Singleton knew there was no way to expect One Hour to pay the large fees for the 1998 and 1999 contracts, but Singleton fully expected One Hour to pay the full amount; and (4) that the signed contracts were necessary for ADI's financing people, even though ADI had no financing people. One Hour believed Singleton and relied on his statements. As such, Saalfield spent many hours faxing, calling, and writing ADI in an effort to cancel the contracts, while still believing that ADI's failure to cancel was merely an oversight. One Hour sustained its burden of establishing the tort of fraud independent of the breach of contract claim.

### IV. Compensatory Damages of $52,911.42

 ADI next contends that the trial court erred in granting compensatory damages in a claim of fraudulent inducement because: (1) the appropriate remedy should have been rescission; and (2) $52,911.42 was excessive.

 Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract. *Lightning Litho, Inc. v. Danka Industries, Inc.,* 776 N.E.2d 1238, 1241 (Ind.Ct.App.2002), *trans. denied* (2003); *Circle Ctr. Dev. Co.,* 762 N.E.2d at 179. Generally, a party bringing an action for fraud in the inducement must elect between two remedies. *A.J.'s Auto. Sales, Inc. v. Freet,* 725 N.E.2d 955, 969 (Ind.Ct. App.2000), *trans. denied; Hart v. Steel Prods., Inc.,* 666 N.E.2d 1270, 1275 (Ind. Ct.App.1996), *trans. denied* (1997). One alternative is to affirm the contract, retain the benefits, and seek damages. *Freet,* 725 N.E.2d at 969; *Hart,* 666 N.E.2d at 1275. The other alternative is to rescind the contract, return any benefits received, and be returned to the status quo. *Freet,* 725 N.E.2d at 969; *Hart,* 666 N.E.2d at 1275. If a party elects to rescind the contract, the trial court must adjust the equities and attempt to return the parties to the status quo. *Smith v. Brown,* 778 N.E.2d 490, 497 (Ind.Ct.App.2002). This usually necessitates not just a rescission of the contract, but also a return of money or other things received or paid under the contract, plus reimbursement as special damages, for any reasonable expenditures incurred as a proximate result of the fraudulent conduct. *Id.*

Prior to jury deliberation, the trial court instructed the jury:

> If you find that One Hour Photo is entitled to a verdict against [ADI] for Fraud, you may then award One Hour Photo special damages in an amount that will reasonably compensate for the following elements of claimed loss or harm. The amount of such award may include the following elements. One, reasonable expenditures incurred as a proximate result of the fraudulent conduct. While there must be some evidence upon which an award for damages

can be made, uncertainty of dollar amount does not prevent the award of damages. No particular degree of mathematical certainty is required in awarding damages so long as the amount awarded is supported by evidence in the record.

*Appellant's Appendix* at 456. ADI did not object to the instruction. The jury returned a general verdict and awarded $52,911.42 in compensatory damages. Where a verdict is a general one, we shall let it stand if the evidence is deemed sufficient to sustain any theory of liability. *English Coal Co., Inc. v. Durcholz,* 422 N.E.2d 302, 311 (Ind.Ct.App.1981). We do not reweigh the evidence and consider only that evidence and the reasonable inferences therefrom which are most favorable to the judgment. *Id.* Saalfield testified that the hours spent resolving this issue and the work lost as a direct result of Singleton's misconduct cost him approximately $50,000.00. *Appellee's Brief* at 25–27. We find sufficient evidence to support the jury's general verdict in the amount of $52,911.42.

### V. Whether the trial court erred in granting damages incurred by Saalfield

■ ADI argues that the trial court erred in granting damages to One Hour on the basis of losses incurred by Saalfield. ADI contends there is no evidence in the record that One Hour paid Saalfield for time spent on the ADI matters, that One Hour reimbursed Saalfield for his mileage, or that One Hour's profit was reduced by time Saalfield spent on ADI matters. ADI contends that, because One Hour is a corporate entity, it is One Hour's damages and not Saalfield's damages that are at issue.

Designating losses as personal or corporate ignores the nature of One Hour's small, family run business. Here, Saalfield and One Hour are inextricably inter-twined. Saalfield is not just an employee of the business; Saalfield *is* the business. The time Saalfield spends with customers and working on store matters creates good will and generates additional business. Because the nature of the dispute was involuntary inclusion of an ad in a telephone directory—an ad for which One Hour had not yet paid—without allowing damages to be, in part, calculated on time lost by Saalfield to resolve the dispute, there would be no adequate remedy for One Hour or Saalfield. It was appropriate for the jury to calculate Saalfield's lost time as part of One Hour's damages.

### VI. Whether the trial court erred in granting punitive damages

■ Punitive damages are those designed to punish the wrongdoer and to discourage him and others from similar conduct in the future. *Budget Car Sales v. Stott,* 656 N.E.2d 261, 265 (Ind.Ct.App. 1995), *trans. denied* (1996). They are awarded in addition to damages that compensate for the specific injury. *Budget Car Sales,* 656 N.E.2d at 265. Therefore, the sole issue is whether the defendant's conduct was so obdurate that he should be punished for the benefit of the general public. *Id.*

■ The standard of review for determining whether punitive damages were properly awarded is whether, considering only the probative evidence and the reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find by clear and convincing evidence that the defendant acted with malice, fraud, gross negligence or oppressiveness that was not the result of a mistake of fact or law, honest error of judgment, overzealousness, mere negligence, or other human failing. *Coca–Cola Co. v. Babyback's Intern., Inc.,* 806 N.E.2d 37, 49 (Ind.Ct.App.2004), *trans. denied* (citing

*Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 520 (Ind.1993)). Punitive damages may also be awarded upon a showing of willful and wanton misconduct. *Mitchell v. Stevenson,* 677 N.E.2d 551, 564 (Ind.Ct.App.1997), *trans. denied.*

■ The evidence clearly showed that Singleton acted willfully and wantonly and committed fraud. Saalfield asserted that he was induced to sign the 1998 and 1999 contracts because Singleton claimed that Saalfield could cancel them at any time and Singleton seemed honest and straightforward. In an affidavit, Saalfield related Singleton's assurance that "what was written on the form contracts was not important." *Appellant's Appendix* at 117. Singleton denied that he made these comments and further denied that he was aware that Saalfield wanted to cancel the contracts. *Transcript, Vol. 1* at 171.

Testimony of Kevin Hancock, another Best Book advertiser, corroborated Saalfield's version. Hancock testified that in 1996 Singleton induced him to sign a three-year contract with a promise that he too could cancel the latter two at any time. Like Saalfield, when Hancock tried to cancel, Singleton refused and sued him for nonpayment of the latter two contracts.

Gregg Miller, the international director of sales for ADI in late 1999 and one of the individuals who had tried to collect on account balances for the 1998 and 1999 contracts, testified that ADI had quite a few unhappy customers in every market, *Transcript, Vol. 2* at 11, and said that "[Saalfield] was one of the most professional people I ever ran into, especially considering the situation." *Id.* at 17. Miller also testified that he had told Singleton that Saalfield wanted to cancel the 1998 and 1999 contracts. *Id.* at 18. Pradeep Datta, a former employee of ADI and longtime worker in the telephone directory business, testified that Singleton did not have a positive reputation in the community regarding truthfulness. *Id.* at 38.

The evidence revealed that Singleton intentionally misled Saalfield, as he had done to at least one other consumer, so that Saalfield would sign the contracts, thereby enabling ADI to sue for nonpayment and argue that the integration clause precluded the introduction of parol evidence to prove fraud. Considering the probative evidence and reasonable inferences supporting the judgment, we find that a reasonable trier of fact could find by clear and convincing evidence that Singleton, acting on behalf of ADI, acted with malice and fraud. *Coachmen Industries, Inc. v. Dunn,* 719 N.E.2d 1271, 1277 (Ind.Ct.App.1999), *trans. denied* (2000). Punitive damages were appropriate under the facts of this case.

*VII. Attorney's Fees*

■ ADI finally contends that the trial court erred in granting One Hour reasonable attorney fees under IC 34–52–1–1, on the basis that ADI filed and continued to litigate a frivolous, unreasonable, and groundless claim. IC 34–52–1–1(b) provides in pertinent part:

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

A claim is "frivolous" if it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational

argument for extension, modification, or reversal of existing law. *Gaw v. Gaw*, 822 N.E.2d 188, 192 (Ind.Ct.App.2005); *Commercial Coin Laundry Sys. v. Enneking*, 766 N.E.2d 433, 441 (Ind.Ct.App.2002). A claim is "unreasonable" if, based upon the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation. *Gaw*, 822 N.E.2d at 192; *Commercial Coin Laundry*, 766 N.E.2d at 441. A claim is "groundless" if no facts exist which support the claim relied upon by the losing party. *Gaw*, 822 N.E.2d at 192; *Commercial Coin Laundry*, 766 N.E.2d at 441.

Generally, when reviewing an award of attorney fees under IC 34–52–1–1, we first review the trial court's findings of fact under a clearly erroneous standard and review the legal conclusions of the trial court de novo. *Brademas v. South Bend Comty. School Corp.*, 783 N.E.2d 745, 750 (Ind.Ct.App.2003), *trans. denied.* We review the trial court's decision to award attorney fees and the amount thereof under an abuse of discretion standard. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.* Here, because the trial court ordered the payment of attorney fees without setting out findings of fact and conclusions, we restrict our review to determining whether the trial court abused its discretion. *See Turner v. Bd. of Aviation Comm'rs*, 743 N.E.2d 1153, 1170 (Ind.Ct.App.2001).

ADI asserts that this case, in large part, presented an issue of credibility. While we agree that aspects of this case required the jury to evaluate witness credibility, we agree with the trial court that based on the totality of the circumstances, including the law and facts known at the time of trial, no reasonable attorney would consider the claim justified or worthy of litigation. In light of the fact that ADI had three executed contracts with integration clauses, it was not unreasonable for an attorney to have filed a breach of contract action. However, prior to trial, it would have become clear that Singleton's behavior made the pursuit of charges owed under the contracts frivolous, unreasonable, and groundless. Furthermore, even if the contracts had been valid, ADI was suing for the balance owed under the 1997 contract for trade services, which had never been requested, and for advertisements included in a 1998 publication that Singleton admitted had never been printed. *Appellant's Appendix* at 176. The trial court did not err in awarding attorney fees on the basis that ADI's breach of contract suit was frivolous.

Affirmed.

BAKER, J., and ROBB, J., concur.