Francis Michael GARDNER, Thomas E.
Gardner and Francis A. Gardner,
Appellants–Defendants,

v.

Mary Ann McCLUSKY,
Appellee–Plaintiff.

No. 92A05–9305–CV–185.

Court of Appeals of Indiana,
Fifth District.

Feb. 16, 1995.

Rehearing Denied May 18, 1995.

Lee B. McTurnan, Wayne C. Turner, McTurnan & Turner, Indianapolis, for appellants.

James W. Childs, Mark H. Ludwig, Akron, OH, for appellee.

## OPINION

BARTEAU, Judge.

Francis Michael Gardner, Thomas E. Gardner and Francis A. Gardner appeal the trial court's judgment discharging the obligation owed to Francis Michael Gardner and Thomas Gardner, secured by a mortgage on Mary Ann McClusky's ("Mary Ann") farm and the judgment against Francis A. Gardner ("Frank Gardner" or "Gardner") in the amount of $300,000. Francis Michael Gardner, Thomas E. Gardner and Francis A. Gardner are referred to collectively as "Defendants."

Because we reverse in part and affirm in part, we address only the following issues:

1. Whether the trial court erroneously admitted handwriting expert opinion where the genuineness of the writing used for comparison was not proved;
2. Whether the evidence supports a finding of fraud; and,
3. Whether the evidence supports the finding that the obligation was discharged.

### FACTS

In 1981, Curtis McClusky, Mary Ann's husband at the time, obtained a Small Business Administration ("SBA") loan commitment for $225,000 to start a grocery business known as Freshway Foods Company. One of the requirements of the commitment was that Curtis and Mary Ann had to put $75,000 of their own money into the business as a capital equity injection. The McCluskys did not have the money, but Mary Ann owned a farm in Whitley County, Indiana, in her name only. Frank Gardner, a family friend and business advisor, agreed to loan the $75,000 to the McCluskys if Mary Ann mortgaged her farm to Gardner's sons, Francis and Thomas, as security. The note representing the loan was made payable to Francis and Thomas Gardner. Mary Ann and Curtis then loaned the $75,000 to Freshway Foods.

At the closing of the SBA loan, the McCluskys presented two notes to the SBA. One note was from the McCluskys to Francis and Thomas Gardner, evidencing the loan from Frank Gardner for $75,000 and the other note was from Freshway Foods to the McCluskys for $75,000, evidencing the loan from the McCluskys to Freshway Foods.

After the McCluskys divorced, Mary Ann found the note payable to Francis and Thomas Gardner in a file in the basement of the house she had shared with Curtis. At the time of trial, the word "Paid" had been written across the face of the note. Mary Ann could not recall if the note was written on when she found it. She assumed the note had been paid and when the Gardners refused to cancel the mortgage on her farm, she filed suit to quiet title. Frank Gardner then produced a note dated January 28, 1982, executed by Mary Ann and Curtis McClusky, promising to pay $75,000 to Francis Michael and Thomas Gardner. Gardner claimed this note represented the obligation secured by the mortgage and that it had not been paid. Mary Ann denied signing the note dated January 28, 1982.

At trial, Mary Ann amended her complaint to include an allegation against Frank Gardner of negligent income tax preparation.

The jury returned the following verdict:

We, the jury, find that the obligation to the Defendants Francis Michael Gardner and Thomas E. Gardner secured by a mortgage on Plaintiff's farm is discharged.

As to the Plaintiff's damage claim against the Defendant, Frank A. Gardner, we, the jury, find as follows:

(1) We find for the Plaintiff and against the Defendant, Frank A. Gardner, on the fraud claim and assess damages in the sum of $190,000.00.

(2) We find for the Plaintiff and against the Defendant, Frank A. Gardner, on the negligence claim and assess damages in the sum of NONE.

(3) We find for the Plaintiff and against the Defendant, Frank A. Gardner, on the punitive damages claim and assess punitive damages in the sum of $110,000.00.

R. 1587–1588. Other facts will be presented as necessary.

### HANDWRITING EXPERT

Gardner argues that the trial court erroneously admitted the testimony of a handwriting expert. To prove that Mary Ann did not sign the note dated January 28, 1982, Mary Ann presented the testimony of a questioned document expert. Based upon comparisons made among the two notes (the questioned documents) and samples of Mary Ann's handwriting, the expert's opinion was that Mary Ann did not sign the note dated January 28, 1982. Defendants objected at trial to the admission of several samples of handwriting used by the expert because no foundation was laid to prove the genuineness of the handwriting in those samples. Defendants also moved to strike the expert's testimony at the end of plaintiff's case because

the foundational evidence was never admitted.

Indiana Code 34–3–6–1 provides [1]:

In any proceeding before a court or judicial officer of the state of Indiana where the genuineness of the handwriting of any person may be involved, any admitted or proved handwriting of such person shall be competent evidence as a basis for comparison by witnesses ... to prove or disprove such genuineness.

Before evidence of comparison may be given, the genuineness of the handwriting serving as the standard of comparison must be established. *Huspon v. State* (1989), Ind., 545 N.E.2d 1078, 1082. The genuineness may be established by the admission of the person sought to be charged with the disputed writing made at or for the purpose of the trial or by his testimony. *Id.*

■ It is true that several of the exhibits used as samples for comparisons were not established at trial as genuine. However, on cross-examination, the expert stated that three exhibits had been the most useful in reaching his conclusion. Those exhibits were Defendants's exhibits J, K, and H which had been identified by Mary Ann and admitted during her cross-examination. Mary Ann testified that exhibit J contained her signature, and both exhibit K and H were in her handwriting. These samples were properly established to be genuine. Because the expert testified that these were the three most helpful samples, the error in allowing the other samples to be admitted is harmless. The trial court properly denied Defendants's motion to strike the expert's testimony.

### FRAUD

Defendants next argue that Mary Ann failed to prove fraud because she failed to prove reliance on a false representation and she failed to prove damages. Initially, we note that the claims arose out of events occurring in Ohio. The parties agree that Ohio law applies to the substantive issues.

To prevail on a claim of fraud, the plaintiff must prove each of the following elements of fraud:

(a) a representation or, where there is a duty to disclose, concealment of a fact,

(b) which is material to the transaction at hand,

(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge must be inferred,

(d) with the intent of misleading another into relying upon it,

(e) justifiable reliance upon the representation or concealment, and

(f) a resulting injury proximately caused by the reliance.

*Burr v. Board of Com'rs of Stark County* (1986), Ohio, 491 N.E.2d 1101, 1105.

■ First, Defendants argue that there is no evidence Mary Ann relied on Gardner's misrepresentation that the note dated January 28, 1982, was the note that had been delivered to him by the McCluskys. Gardner's representation that he was holding the unpaid note representing the $75,000 loan to the McCluskys, while perhaps false, was not relied upon by Mary Ann to her detriment. She did not even know of the existence of that note until after she filed her lawsuit claiming fraud. She did nothing to her detriment in reliance on Gardner's representation that it was the "real" note. She steadfastly claimed that it was false and that the note dated January, 1982, was the only note she had signed. Gardner's misrepresentation of the note dated January 28, 1982, does not support Mary Ann's claim for fraud.

■ Second, Defendants argue that the evidence does not support the allegation of fraud that Gardner misrepresented to Mary Ann that he had advanced $75,000 to Freshway. The evidence at trial conflicted as to whether Gardner in fact advanced $75,000 to Freshway. There was a dispute as to whether all of the checks representing $75,000 had in fact been deposited in Freshway's account. It was the jury's prerogative to determine whether the full $75,000 had been advanced.

■ However, Defendants argue that Mary Ann failed to show that she relied on

1. This case was tried before the Indiana Rules of Evidence became effective.

any misrepresentation to her detriment, because she suffered no damages. Mary Ann argues she incurred damage because Gardner was seeking close to $110,000 on the note. However, Mary Ann has not paid any money on the note. In fact, by her separation agreement with Curtis, approved by the divorce court, Curtis is responsible for the debt. Mary Ann also argues that she presented evidence at trial of the restraint on alienability of her farm, the slander on her title, and the "limitations in income occasioned by the payments of interest to Gardner." Brief of Appellee, p. 9. There is no evidence in the record that Mary Ann was injured by the lien on the farm. There is no evidence that she ever attempted to sell the farm or borrow money against it, or was impeded in doing anything with it because of the lien. She was denied credit at department stores and VISA refused to refinance her account balance, but those instances were never tied to the lien on the farm. As for the "limitations in income," the evidence shows only that Freshway, a corporation, made interest payments directly to the Gardners, but there is no evidence that the payment of interest on the loan decreased the salary that Curtis received from Freshway or in any other manner came from funds in which Mary Ann had an interest. Thus, there is no evidence that Freshway's interest payments limited income received by the McCluskys. Defendants are correct that no evidence was presented at trial from which the jury could infer that Mary Ann incurred actual damages.

Also, Defendants point out that Mary Ann herself testified that Gardner made no representations to her at all about the loan prior to her signing the note. All conversations she had about the loan were with her husband. Thus, Gardner made no misrepresentations to Mary Ann upon which Mary Ann relied and which induced her to sign the note. Mary Ann's claim of misrepresentation as to the full amount of the loan being advanced does not support her action for fraud.

Third, Defendants argue that the evidence does not support a finding that Gardner made a fraudulent misrepresentation concerning the interest to be charged on the

$75,000 note. The evidence shows that the note representing the $75,000 loan bears an annual interest rate of 15%. Evidence also shows that in the books kept for Freshway, Gardner accrued 15% interest on the loan, but compounded the interest, contrary to the terms of the note. Thus, Mary Ann claimed that Gardner misrepresented the interest he intended to charge. Gardner admitted at trial that the note did not provide for compound interest and that he had been in error. He corrected the books to show interest accruing at a simple 15% rate. The Defendants are correct that the evidence does not support Mary Ann's claim.

Mary Ann testified that she never had any conversations with Gardner concerning the $75,000 before she executed the note. Thus, Gardner could not have made any misrepresentations to her to induce her to sign the note, including any misrepresentations about the interest rate. Also, under Ohio law, while fraud may be predicated upon promises or representations relating to future conduct, it must be proven that at the time of the promise, the person making the promise had no intention of carrying it out. *Freeman v. Westland Builders, Inc.* (1981), 2 Ohio App.3d 212, 441 N.E.2d 283, 289; *see also Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295, 1299. It is not enough to merely show that what was promised is not what occurred. *Freeman,* 441 N.E.2d at 289. Here, Mary Ann produced no evidence from which the jury could infer that Gardner did not intend to collect 15% interest at the time the note was signed. Thus, Mary Ann's claim for fraud cannot be predicated on the interest rate charged in the note.

Defendants are correct that the evidence supports neither a finding of fraud nor actual damages suffered by Mary Ann. Thus, we reverse the judgment awarding damages of $190,000 to Mary Ann. Under Ohio law, punitive damages may not be awarded where there is no proof of actual damages. *Shimola v. Nationwide Ins. Co.* (1986), 25 Ohio St.3d 84, 495 N.E.2d 391, 393. Thus, the award of punitive damages in the amount of $110,000 is also reversed.

## DISCHARGE

 Mary Ann sought to quiet title to her farm property by cancelling the mortgage on the grounds that the underlying obligation was discharged, either because there was a fraudulent misrepresentation as to the amount exchanged for the note, or because the note evidencing the obligation had been surrendered by Gardner. As discussed above, the evidence does not support a finding of fraudulent misrepresentation. It is not clear from the jury's verdict upon which basis it found that the obligation had been discharged. However, where a verdict is general, we will let it stand if the evidence is deemed sufficient to sustain any theory. *English Coal Co., Inc. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302, 311, *reh'g denied, trans. denied.* Thus, if the evidence supports the theory of discharge by surrender, we will affirm the judgment of discharge.

 Under Ohio Rev.Code 1303.71(A)(2), a holder of a note may discharge the obligation by surrendering the note to the person to be discharged. The surrender of the note must be accompanied by the intent to discharge the party to whom the note is delivered. *Kinney v. Columbus Temperature Control Co.* (1981), 2 Ohio App.3d 396, 442 N.E.2d 465. Defendants argue that the mere fact that Mary Ann found the note in a file in the basement is insufficient to prove Gardner surrendered the note because Mary Ann does not know how the note got there. Mary Ann testified that Gardner never gave the note to her. Thus, Defendants argue there is a complete absence of evidence that Gardner surrendered the note with the intent to discharge the obligation. Mary Ann argues that it is enough that she was in possession of the note and it had been marked "Paid."

 Ohio Rev.Code 1303.71 is identical to Uniform Commercial Code 3–605, which provides:

(1) The holder of an instrument may even without consideration discharge any party:

\* \* \*

(b) By renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

Under the UCC, possession of the note by the debtor creates a rebuttable presumption of discharge. *Columbia Savings v. Zelinger* (1990), Colo., 794 P.2d 231, 234 (citing J. White & R. Summers, Uniform Commercial Code § 13–22 at 684 (3d ed. 1988)). Ohio has not addressed whether this presumption is applicable to O.R.C. 1303.71. However, the general rule recognized at common law is that "a note in the hands of the maker, after due, is presumed, in law, to have been paid off and taken up by the maker." *Regas v. Coston* (1951), 64 Ohio Law Abs. 181, 103 N.E.2d 793, 796; *see generally* 11 C.J.S. *Bills and Notes* § 662 (1938 & Supp.1994). Given that Ohio courts recognized at common law the presumption of payment when the maker possessed the note, we see no reason why Ohio would not also recognize the U.C.C. rebuttable presumption of discharge and apply it to O.R.C. 1303.71.

In *Tally Ho Associates v. Worth Bank & Trust Co.* (1994), Ill.App., 637 N.E.2d 705, the Appellate Court of Illinois affirmed the trial court's finding of discharge under Illinois's version of UCC 3–605, determining that the evidence was conflicting and thus, properly left to the fact-finder to decide if the presumption had been rebutted. In that case, the maker of the note was in possession of the original note and the payee had possession of a copy of the note. The maker claimed that the note was paid and the payee disputed that claim. The payee did not know how the maker came to be in possession of the original note, although the maker claimed that the payee's president had given him the note in 1980 or 1981. Nothing on the original note itself indicated it had been paid and payments had been made to the payee after the maker claimed to have been given the note back. The maker claimed that those payments were gifts to the payee's president, who died in 1983.

 Similarly, here, Mary Ann's possession of the original note marked "Paid" raises the presumption that it was surrendered with the intent to discharge. It was for the fact-finder to determine whether Defendants rebutted that presumption with the

evidence that Gardner had not returned the note and that no one could say who had written "Paid" on the note. The jury found that the note had been discharged and the evidence supports that finding.

We affirm the trial court's judgment discharging the obligation and quieting title to Mary Ann's farm.

REVERSED IN PART AND AFFIRMED IN PART.

SHARPNACK, C.J., and RUCKER, J., concur.