Diane WERBLO, Plaintiff–Appellant,

v.

BOARD OF SCHOOL TRUSTEES OF the HAMILTON HEIGHTS SCHOOL CORPORATION, and Sylvia Kay Hartley, V. Ray Mosbaugh, Lawrence C. Beck, Keith Schulenburg, and Ronald E. McGill, individually and in their capacity as members of the Board of School Trustees of Hamilton Heights School Corporation, Defendants–Appellees.

No. 29A02–8704–CV–167.

Court of Appeals of Indiana, First District.

Feb. 16, 1988.

Richard J. Darko, Debora J. Waltz, Lowe Gray Steele & Hoffman, Indianapolis, for plaintiff-appellant.

James W. Riley, Jr., Donald S. Smith, Callahan & Riley, Indianapolis, Jack G. Hittle, Church, Roberts & Beerbower, Noblesville, for defendants-appellees.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Diane P. Werblo appeals from the Hamilton Superior Court's dismissal of her claim brought under 42 U.S.C. § 1983, and affirmance of the Board of School Trustees of Hamilton Heights School Corporation's (School Board) decision to dismiss her for insubordination. We affirm in part and reverse in part.

## FACTS

Diane P. Werblo taught English and Latin at Hamilton Heights High School during the 1983–84 school year as a tenured teacher. As part of the English course Werblo led her class through a movie version of "Romeo and Juliet" in preparation for a test on the Shakespearean play. The students were scheduled to view the final third (⅓) of the play on April 11, 1984. However, a convocation entitled "Sport-sworld" which contained religious materials was scheduled on the same day. On April 10, 1984, Werblo discussed the conflicting schedule with Eugene Pitts, the school principal, and sought permission for her class to view the final third (⅓) of the play, rather than attend the convocation. A resolution to the conflict was not reached at that time. Werblo again discussed the conflict with Pitts on April 11, 1984, and further explained that the video was on loan and could not be secured for another time. Pitts considered the situation and then directed Werblo to attend the convocation with her students. Subsequently, Pitts made an announcement on the school's public address system. The announcement discussed the convocation, noted the speaker's career as a football player, and advised that the convocation would include religious content. The announcement also indicated that anyone who did not wish to attend the convocation for religious or "any other reasons" was to report to the principal's office or Pitts in the hallway.

Werblo interpreted this later announcement as a way for her class to view the movie, rather than attend the convocation. Accordingly, Werblo gave her students the individual option of attending the convocation or viewing the movie. Werblo and sixteen (16) of thirty (30) students chose to view the movie. In accordance with the announcement Werblo and the sixteen (16) students reported to the office and objected to attending the convocation. Werblo objected on religious grounds. Thereafter, Werblo and the students went to the library and viewed the movie.

On April 18, 1984, the School Board notified Werblo that a meeting would be held on May 21, 1984, to consider the cancellation of her indefinite teacher contract. The notice provided also that Werblo had a right to request a hearing. On April 25, 1984, Werblo requested a written statement of the reasons for the consideration of cancellation and requested a hearing. On April 30, 1984, the School Board notified Werblo that the consideration of cancellation was based upon, "alleged insubor-

dination by [Werblo] with regard to the required attendance of [Werblo's] class at a school convocation to have been held on April 11, 1984, and these actions by [her] with regard to that incident [were] being considered a willful refusal to obey reasonable rules of the School." Record at 255. The School Board also notified Werblo that the hearing would be held on May 14, 1984, at 7:30 P.M. in the School Board room.

At the hearing, the School Board accepted evidence, and heard testimony from witnesses called by both Pitts and Werblo. A teacher's union representative assisted and acted on behalf of Werblo. After the hearing, School Superintendent Dr. Bob A. Carnal recommended termination of Werblo's contract. On May 21, 1984, the School Board met again, issued findings of fact and conclusions of law and determined that Werblo's actions constituted a willful refusal to obey a reasonable rule or direction from the principal which amounted to insubordination. Based upon this determination the School Board cancelled Werblo's contract, effective May 22, 1984.

On October 23, 1984, Werblo filed a complaint against the School Board and its individual members in three counts. Count I of Werblo's complaint alleged a violation of her constitutional and civil rights and was brought under 42 U.S.C. § 1983. In addition to reinstatement, back pay, and damages, Count I also sought attorney's fees under 42 U.S.C. § 1988. In Counts II and III Werblo alleged that the School Board breached her contract and violated Indiana's Tenured Teacher Act, Indiana Code sections 20-6.1-4-10, 11 and 12. Count II requested the trial court to issue a mandate requiring the School Board to reinstate Werblo and to pay Werblo back pay. Count III sought Fifty Thousand Dollars ($50,000) in damages.

On November 20, 1985, the School Board filed a Motion for Summary Judgment. The School Board argued that Werblo's Count I should be dismissed for failure to provide notice pursuant to Indiana's Tort Claim Act, Indiana Code section 34-4-16.-5-1 et seq. (hereinafter ITCA). The School Board argued also that summary judgment was appropriate under Counts II and III because the School Board complied with the Tenured Teachers Act and because substantial evidence of probative value existed to support the termination. Thereafter, the trial court requested and the School Board provided a transcript of the termination hearing. Werblo filed a motion to strike the transcript and argued that the School Board altered the transcript. The trial court denied Werblo's motion to strike and granted the School Board's Motion for Summary Judgment. The trial court dismissed Count I of Werblo's complaint for failure to comply with the ITCA, found that no material issues of fact existed as to Count II and III of Werblo's complaint, and held that the School Board was entitled to judgment as a matter of law. Werblo appeals these rulings.

## ISSUES

While Werblo presents three (3) issues for review, two (2) issues are dispositive:

(1) Whether the trial court erred by dismissing Werblo's Count I for failure to comply with the ITCA?

(2) Whether the trial court erred by finding that the School Board complied with the Tenured Teachers Act and was entitled to summary judgment on Counts II and III of Werblo's complaint?

## DISCUSSION AND DECISION

*Issue One*

Werblo argues first that the trial court improperly granted the School Board's Motion for Summary Judgment based upon failure to provide notice under the ITCA and erred by dismissing Count I of her complaint which sought reinstatement, back pay, damages, and attorney fees under 42 U.S.C. §§ 1983 and 1988. In reviewing the grant or denial of summary judgment this court applies the same standard as the trial court. *Brenneman Mechanical and Elec., Inc. v. First National Bank of Logansport* (1986), Ind.App., 495 N.E.2d 233, 240, *trans. denied; First Savings and Loan Ass'n of Central Indiana v. Treaster* (1986), Ind.App., 490 N.E.2d 1149, 1151,

*trans. denied.* A trial court may grant summary judgment only when no issue of material fact exists and when the movant is entitled to judgment as a matter of law. Indiana Rules of Procedure, Trial Rule 56(C); *Brenneman*, at 240; *Treaster*, at 1151. The movant bears the burden of persuasion and must establish the propriety of summary judgment. *Popp v. Hardy* (1987), Ind.App., 508 N.E.2d 1282, 1284; *Kidd v. Davis* (1985), Ind.App., 485 N.E.2d 156, 158. The summary judgment standard compels the trial and reviewing courts to view the facts and the inferences to be drawn therefrom in a light that is most favorable to the non-movant. *Popp*, at 1284; *Kidd*, at 158.

Under the ITCA a party bringing a suit or claim in tort must provide notice within 180 days of the occurrence of a loss to the governmental agency, the governmental actors involved, and in some cases the Indiana Political Subdivision Risk Management Commission. Ind.Code § 34–4–16.5–1 et seq. Notice is a procedural condition precedent to suit, but the 180 day limitation does not equate to a statute of limitations for the party's suit. *Indiana Dept. of Pub. Welfare v. Clark* (1985), Ind.App., 478 N.E.2d 699, 701, *cert. denied* (1986), 476 U.S. 1170, 106 S.Ct. 2893, 90 L.Ed.2d 980. The purpose of notice under the ITCA is to inform governmental entities of the circumstances surrounding the alleged loss so that an investigation can be made to determine if wrongful conduct and liability exists. *Orlowski v. City of South Bend* (1985), Ind.App., 482 N.E.2d 1380, 1382. Failure to file the required notice within 180 days acts as a bar to claims or suits against those entitled to receive notice. *Clark*, at 702.

In the present case, Werblo argues that notice was not required because Count I of her complaint, which was brought under § 1983, did not arise in tort but rather arose out of her employment contract. Werblo argues that the ITCA does not apply to all § 1983 suits against the government and suggests that each case has to be

analyzed to determine the nature of the cause of action. Werblo suggests further that § 1983 claims alleging constitutional and civil rights deprivations which arise out of an employer-employee relationship should not be subjected to the ITCA's notice provisions, and relies on *City of Mishawaka v. Squadroni* (1985), Ind.App., 486 N.E.2d 1088, *trans. denied; Bernhardt v. State* (1985), Ind.App., 479 N.E.2d 1367, *trans. denied,* and *City of Terre Haute v. Brighton* (1983), Ind.App., 450 N.E.2d 1039, *trans. denied.* Werblo's arguments fail and her reliance on *Squadroni, Bernhardt* and *Brighton* is misplaced.

■ In *Squadroni*, the third district of this court held that the ITCA did not apply to claims of retirees who had acquired vested interests in their pension benefits, which were characterized as contractual. *Squadroni,* at 1091–92. *Squadroni,* however, did not involve a § 1983 claim. In *Bernhardt*, firefighters brought a claim based solely on a statutorily based employment contract. The fourth district of this court held that although the claim involved constitutional rights, the action arose from the contractual employment relationship and sounded in contract. Accordingly, the notice provisions of the ITCA were found inapplicable. *Bernhardt,* at 1369. *Bernhardt,* however, did not involve a § 1983 claim. Finally, in *Brighton,* firefighters sued the city claiming breach of contract, violation of the Policeman's and Fireman's Tenure Act, and violation of their constitutional rights to due process of law. The fourth district of the court held that the suit sounded in contract even though constitutional rights were involved. *Brighton,* at 1040–42. Again, however, § 1983 was not involved in *Brighton.* None of the state court cases Werblo relies on dealt with claims under § 1983. Accordingly, their holdings which indicated that the ITCA does not apply to actions arising out of an employer-employee contractual relationship are inapplicable to the present claim brought under § 1983.[1] Furthermore, although Werblo correctly notes that

---

1. This court notes that Counts II and III of Werblo's complaint are not brought under § 1983 and as in *Squadroni, Bernhardt,* and

*Brighton,* are not subject to the ITCA, because the claims are grounded in contract.

application of the ITCA is limited to suits or claims in tort, this court determined previously that § 1983 claims are grounded in tort. *Clark*, at 702.

In *Clark*, this court addressed the applicability of the ITCA to § 1983 claims and determined that § 1983 claims are characterized properly as claims in tort. Accordingly, Clark's § 1983 claim for denial of welfare benefits was subject to the notice provisions of the ITCA. Since Clark failed to provide notice within 180 days of the occurrence of the loss, her suit was barred. *Clark*, at 702. In the present case, Count I of Werblo's complaint was brought under § 1983. Although the claim arguably is unlike *Clark* factually in that it developed out of her employment contract with the School Board rather than a welfare denial, as in *Clark*, her § 1983 claim, substantively, is characterized properly as a tort action, and is subject to the ITCA. Furthermore, the undisputed evidence reveals that Werblo failed to provide notice to the School Board under the ITCA. Therefore, since the ITCA applies, and since no material issue of fact exists as to Werblo's non-compliance, the trial court properly granted the School Board's motion for summary judgment, and did not err by dismissing Count I of Werblo's complaint.

Werblo argues the decision in *Clark* does not hold that all § 1983 suits are grounded in tort and suggests that such a holding improperly extends the United States Supreme Court's ruling in *Wilson v. Garcia* (1985), 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254, and contradicts federal precedent. Werblo is mistaken. Although Werblo correctly points out that *Wilson* addressed § 1983 only with regard to the appropriate statute of limitations, the supreme court specifically determined that § 1983 claims were characterized best as tort actions for the recovery of damages for personal injuries. *Wilson*, 471 U.S. at 280, 105 S.Ct. at 1949, 85 L.Ed.2d at 269. This determination was consistent with the congressional intent and design of § 1983. As stated in *Wilson*,

"Among the potential analogies, Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract. The unifying theme of the Civil Rights Act of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every '*person*' subject to the jurisdiction of any of the several States. The Constitution's command is that all '*persons*' shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person."

*Wilson*, at 471 U.S. at 277, 105 S.Ct. at 1948, 85 L.Ed.2d at 267. The characterization of § 1983 suits as tort claims is not a recent development or limited to statute of limitation determinations. *See, Memphis Community School District v. Stachura* (1986), 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249. In *Stachura*, the Supreme Court analyzed the proper scope of damages in a suit brought under § 1983 for deprivation of constitutional rights. In determining the proper measure of damages the court referred to § 1983 claims as grounded in tort principles. The Supreme Court stated,

"We have repeatedly noted that 42 U.S.C. § 1983 creates ' "a species of tort liability" in favor of persons who are deprived of "rights, privileges, or immunities secured" to them by the Constitution.' *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978), quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed. 2d 128 (1976). See also *Smith v. Wade*, 461 U.S. 30, 34, 103 S.Ct. 1625, 1628, 75 L.Ed.2d 632 (1983); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258–259, 101 S.Ct. 2748, 2755–2756, 69 L.Ed.2d 616 (1981). Accordingly, when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of

torts. See *Smith v. Wade, supra,* 461 U.S., at 34, 103 S.Ct., at 1628; *Carey v. Piphus, supra,* 435 U.S., at 257–258, 98 S.Ct., at 1048–1049; cf. *Monroe v. Pape,* 365 U.S. 167, 196, and n. 5, 81 S.Ct. 473, 488, and n. 5, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring)."

*Stachura,* 477 U.S. at 305–306, 106 S.Ct. at 2542, 91 L.Ed.2d at 257–58. Therefore, this court sees no problem with our holding in *Clark* which characterized § 1983 claims as grounded in tort for purposes of the application of the ITCA.

■ Werblo argues also that Indiana courts should follow the decision of *Craig v. Witucki* (N.D.Ind.1986), 624 F.Supp. 558, which held that § 1983 claims brought in federal court are not subject to the ITCA. A similar argument was forwarded in *Clark.* Again, this court refuses to place such a limitation on the application of the ITCA to § 1983 suits brought in state court, and finds *Craig* inapposite to the present case. *Craig* involved a § 1983 suit brought in federal court, under federal question jurisdiction. *Craig,* at 559. Accordingly, Indiana's rules of procedure and the notice provisions of the ITCA were inapplicable. The present case, however, is distinguishable. Werblo brought her § 1983 suit in state court. Werblo's decision to file her § 1983 claim in state court subjected her claim to Indiana's rules of procedure, including the notice provisions of the ITCA. *Clark,* at 702; *May v. Blinzinger* (1984), Ind.App., 460 N.E.2d 546, 550; *Thompson v. Medical Licensing Bd.* (1979), 180 Ind.App. 333, 347–48, 398 N.E. 2d 679, 680, (on rehearing), *cert. denied* 449 U.S. 937, 101 S.Ct. 335, 66 L.Ed.2d 160. As stated in *Thompson,*

"Thus we repeat, a state court does not undergo a metamorphosis into a federal court merely because it must decide a § 1983 suit. No matter what the nature of the action before an Indiana state court, it remains a state court. As Gertrude Stein observed, a 'rose is a rose is a rose is a rose'. Our rules of trial procedure and evidence still apply. So does our requirement of exhaustion.

"If Thompson desired the benefit of federal procedures, he should have brought his suit in federal court."

*Thompson,* 180 Ind.App. at 347–48, 398 N.E.2d 679, 680. Although *Thompson* dealt with exhaustion of administrative remedies, the import of the decision applies equally to the requirements of the ITCA. Accordingly, § 1983 claims brought in state court are subject to the notice provisions of the ITCA.

■ Werblo argues last that application of the ITCA would constitute an unconstitutional retroactive application of new law. Werblo is mistaken. The application of a rule of law does not violate the constitution's bar against retroactivity, unless the rule changes a previous rule, or is new and constitutes a significant departure from prior case law that the parties relied upon. *See generally, Moffett v. State* (1987), Ind.App., 511 N.E.2d 1089, 1090. In the present case, application of the notice provisions to a § 1983 claim does not present a new rule or a rule that significantly departs from previous law relied upon by the litigants. The characterization of § 1983 suits as being a species of tort existed prior to 1984, the time Werblo filed her suit. *See e.g., Imbler v. Pachtman* (1976), 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128, 136. Also, the ITCA applied to suits or claims in tort on the date of the alleged occurrence of Werblo's loss and on the date Werblo filed suit. Furthermore, no case involving § 1983 brought in state court in Indiana has held that the ITCA did not apply to § 1983 claims. Therefore, this court rejects Werblo's argument that application of the ITCA's notice provisions to her claim under § 1983 violates the constitutional prohibition against retroactive applications of new rules of law.

*Issue Two*

Werblo argues next that the trial court improperly granted the School Board's Motion for Summary Judgment on Counts II and III of her complaint, because insufficient evidence existed to support the School Board's ruling that she willfully refused to

abide by a clear and reasonable rule of the school corporation. As stated previously, in reviewing the grant of summary judgment this court applies the same standard as the trial court, and will find the grant proper only when no material issue of fact exists and the movant is entitled to judgment as a matter of law. Trial Rule 56(C); *Brenneman*, at 240; *Treaster*, at 1151. In the present case, Werblo correctly asserts that the evidence does not undisputedly support the School Board's findings and the law does not support the School Board's decision. Therefore, the trial court's grant of summary judgment which summarily validated the School Board's action of dismissal is reversed.

A teacher may be dismissed for insubordination if the teacher willfully refuses to follow a reasonable rule of the school corporation. Indiana Code section 20–6.1–4–10(2); *Stiver v. State ex rel. Kent* (1936), 211 Ind. 370, 377, 1 N.E.2d 592, 594, *reh. denied* (1937), 211 Ind. 370, 7 N.E.2d 181. Rules of the school corporation can include an unambiguous order of the school principal. However, before a teacher can be terminated for violating a principal's directive the evidence must establish that the order was unambiguous and reasonable. *Stiver*, 211 Ind. at 377, 1 N.E.2d at 594. Furthermore, for a rule to be found reasonable, at a minimum, the rule must be lawful.

In the present case, the evidence failed to support undisputedly a finding of an unambiguous and reasonable rule. The evidence established that although Pitts gave Werblo a direct and clear order to attend the convocation, a subsequent announcement muddied the scope of Pitts's order, and made Werblo's duty to attend unclear. The announcement excused from attendance all persons who objected to the convocation for religious or other reasons. The announcement was directed to the entire school and did not exclude Werblo or her class from those who could refuse to attend based on religious or other reasons. Werblo reasonably could have interpreted this as an exception to and revision of Pitts's previous order. Furthermore, although the evidence indicated that Pitts interpreted "any other reason" to be limited to religious or moral purposes, the evidence failed to support the School Board's findings that Werblo's interpretation of the announcement, as providing an excuse from attendance, was unreasonable. Thus, the evidence failed to support a finding that an unambiguous order existed requiring Werblo to attend the convocation. Therefore, the School Board's finding of insubordination and decision to dismiss based on Werblo's non-attendance of the convocation was clearly erroneous, and the trial court's grant of summary judgment was improper.

This court notes also that Pitts's order to Werblo and the general directive that attendance of convocations is mandatory were unreasonable rules under the facts of the present case. These rules arguably required attendance at a convocation which admittedly contained religious messages. The school's endorsement and promotion of the convocation appears to violate the establishment clause of the First Amendment of the United States Constitution. Furthermore, if this court were to accept the School Board's findings that Werblo unreasonably interpreted the announcement as granting an excuse for not attending, the rule also appears to have violated the freedom of religion and association clauses of the First Amendment. However, since this court finds that the order to attend was ambiguous due to the subsequent announcement, the decision to dismiss need not be reversed on these constitutional grounds.

In conclusion, this court holds that the trial court properly dismissed Count I of Werblo's complaint brought under § 1983, because Werblo failed to comply with the notice provisions of the ITCA. Furthermore this court holds that the trial court erred by granting summary judgment to the School Board on Counts II and III of Werblo's complaint. Although the general procedure following the reversal of the grant of summary judgment would result in a remand to the trial court for an evidentiary hearing on the merits of the complaint, in the present case, such a hearing

merely would involve a review of the School Board's proceedings and a determination of appropriate relief. Therefore, in the interests of judicial economy, this court has decided to review the record to determine the propriety of the School Board's actions.

■ The review of a School Board's decision is governed by a well settled two-part analysis. *Stiver*, 211 Ind. at 375, 1 N.E.2d at 594; *Fiscus v. Board of School Trustees of Central School Dist. of Greene County* (1987), Ind.App., 509 N.E.2d 1137, 1140 and 1142 (Ratliff, C.J., concurring, and Conover, P.J., dissenting), (transfer pending). As stated in *Fiscus*,

> "In reviewing the decision of an administrative agency, our duty is two-fold. First, we must determine if the agency's findings support its decision, and, if so, our second determination is whether the evidence before the agency supports its findings. In making these determinations, we always must keep in mind that the agency is the trier of fact, and we may not reweigh the evidence, judge the credibility of witnesses, or substitute our judgment for that of the agency."

*Fiscus*, at 1142 (citations omitted). Our review of the record of the School Board's decision to dismiss in the present case reveals that the rule requiring Werblo's attendance was ambiguous and unreasonable, that the School Board's finding of insubordination was unsupported by the evidence, and that the decision to dismiss Werblo was clearly erroneous. Therefore, this court remands to the trial court to hold proceedings consistent with this holding to determine and to grant appropriate relief to Werblo.

Affirmed in part, reversed in part, and remanded for proceedings on relief under Counts II and III.

Costs against the appellees.

ROBERTSON and NEAL, JJ., concur.