**BUDGET CAR SALES, Appellant (Defendant Below),**

v.

**Ralph STOTT, Appellee (Plaintiff Below).**

No. 11A04–9403–CV–114.

Court of Appeals of Indiana.

Sept. 20, 1995.

Transfer Denied March 12, 1996.

G. Max Rettig, Indianapolis, for Appellant.

Max E. Goodwin, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Budget Car Sales appeals the jury's judgment for Ralph Stott in his action against Budget for fraud and its award to Stott of punitive damages. We affirm in part, reverse in part and remand.

### ISSUES

1. Whether the award of punitive damages was erroneous.

2. Whether a remark of Stott's counsel in his closing statement requires reversal for a new trial.

3. Whether evidence was improperly admitted, warranting a new trial.

### FACTS

On Saturday, April 2, 1988, sixty-six year old Ralph Stott, his sixty-two year old wife, and their daughter Christina were driven to the Terre Haute lot of Budget Car Sales by Christina's husband Anthony. Budget salesman Arsalan Sayyah offered to help them. The Stotts looked at a 1986 Chevrolet Cavalier. The car bore no indication of its price. Because Budget advertised a minimum $3,500 trade-in, the Stotts sought to verify that that applied. Sayyah repeatedly informed them the $3,500 trade-in did not apply to the Cavalier.[1] Mr. Stott was on disability, suffered from scleroderma (which Mrs. Stott described as "a disease from plastic") and black lung disease, and he had been advised not to drive because of his medication. Anthony took the Stotts for a test drive in the Cavalier. Mr. Stott told Sayyah that if he bought the car, new tires would have to be provided.

Mr. and Mrs. Stott went into the Budget office with Sayyah. Mr. Stott signed an "Offer to Purchase" prepared by Sayyah, which specified "4 new tires," "$5800 trade diff," and the trade-in of his unseen but described 1977 Plymouth Volare. (R. 724). The offer was accepted and approved by the lot manager, Paul Clay. Stott's offer to purchase also said "payments of $150 @ mo.," so Clay had Sayyah fill out a credit application with Mr. Stott. The Stotts provided the personal information, credit references and details of their automobile insurance coverage for Sayyah to write on the form. Mr. Stott signed the application. Next Sayyah completed a "Special Conditions of Sale" form, stating "4 new tires" and "no warranty," which Mr. Stott signed. (R. 746). Sayyah also witnessed Mr. Stott sign a statement verifying disclosure that the vehicle was "As Is–No Warranty." (R. 743, 749).

The Stotts then met with Janice Crowley, Budget's "finance and insurance manager."

---

**1.** The advertisement states, "Minimum trade-in does not apply to compacts, subcompacts, advertised specials" but rather to "red-tagged Budget car[s]". (R. 119). The Cavalier was not red-tagged and was a compact.

(R. 880). Crowley would elicit necessary information from car buyers, input the specifics provided into a computer, print the resulting documents, and then obtain necessary customer signatures. Crowley prepared the Used Vehicle Purchase Contract, showing the "amount to be financed by purchaser" as $6,768.95; Mr. Stott signed it. (R. 900, 279). Crowley prepared a "Retail Sales Contract, Security Agreement and Truth In Lending Disclosure" for financing on the $6,768.95; Mr. Stott signed it. Both the Purchase Contract and the Retail Sales Contract included $899 for a service contract in the total price calculation.[2] Crowley gave Mr. Stott a warranty certificate for his service contract, indicating "deluxe" coverage for the "earlier of 36 months or 36,000 miles." (R. 925). This was the "less expensive" option available. (R. 928). Mrs. Stott tendered a check, signed with Mr. Stott's name, for $290. The Stotts left Budget with the 1986 Cavalier and copies of their paperwork. Mr. Stott's credit application was faxed to the bank and approved that same day.

The Stotts did not realize Mr. Stott had bought the car until that evening when they read the documents Mr. Stott had signed. They thought Mr. Stott had merely completed forms applying for a loan and that they had three days in which to consider, within which they could return the car. Budget was closed when they tried to call, not opening again until Monday morning. On Monday Mr. Stott's granddaughters took him, with the Cavalier and the Volare, to the Budget lot. They departed with only the Cavalier.

Two days later Mr. and Mrs. Stott consulted an attorney. The attorney wrote a letter to manager Clay at the Budget lot, stating his belief that Mr. Stott "was under a mental incompetency when he entered into this contract and the contract is void" and suggesting Budget agree to accept the Cavalier "in return for recission [sic] of the contract." (R. 424). Budget declined, responding that "[t]here is absolutely no evidence that Mr. Stott was not fully competent and aware of his acts on the day of sale." (R. 427).

On June 8, 1989, Ralph Stott filed a complaint alleging fraud on the part of Budget. Trial was held over five days near the end of 1993. Mr. Stott, Mrs. Stott and Christina testified, but Anthony did not, as his whereabouts were unknown. Since 1988 Mr. Stott had suffered a stroke and major deterioration of his eyesight. His testimony reveals his frequent inability to remember details of the April 1988 visit to the car lot. However, both Mrs. Stott and Christina denied he was subject to confusion or lack of comprehension on that day. Mr. Stott said he did not read the documents he signed, but he was not prevented from doing so. There was no testimony from Mr. Stott, Mrs. Stott or Christina that Sayyah, or any other Budget personnel, quoted them a specific price for the Cavalier; all three did say Sayyah told them a service warranty could be obtained for $300. An advertisement in the local paper indicated the Cavalier was specially priced at $4,995 on April 2nd, the day of purchase. According to Sayyah's and Clay's undisputed testimony, Mr. Stott made the offer of $5,800, subject to certain conditions, for the car. Both Sayyah and Clay testified they were unaware during the Stott visit that the car was specially priced in the ad and said Mr. Stott would have paid more for the car had they applied the advertised price. The jury returned a verdict for Mr. Stott and against Budget, assessing $4,041.22 compensatory damages and $150,000 punitive damages. Budget filed a Motion to Correct Errors, which was overruled by the trial court.

### DISCUSSION AND DECISION

At the outset, we note that Budget's appeal propounds four issues. Two of those issues challenge the award of punitive damages. By only challenging the punitive damages awarded, Budget's appeal bears the implicit concession that the compensatory damages awarded are not unreasonable. Further, Budget states that:

[a]lthough Budget does not agree with the jury's apparent finding that Budget misrepresented the various terms of the trans-

---

2. The other charge which both included, beyond the $5,800 and the $899 service contract, was a document preparation fee of $69.95. Accordingly to Crowley, the computer was programmed to add this fee to all car sales at the Budget lot.

action, Budget acknowledges, as it must, that viewing the evidence most favorable to the prevailing party, the record can be said to support a conclusion that the misrepresentations did occur. Therefore, Budget does not challenge this aspect of the jury's verdict.

Budget's Brief at 45. An issue not argued in an appellant's brief is deemed waived. *See, e.g., Foster v. State* (1974), 262 Ind. 567, 320 N.E.2d 745; *Harris Builders, Inc. v. Kopp* (1974), 160 Ind.App. 354, 311 N.E.2d 841; *see, also,* Ind.Appellate Rule 8.3. Accordingly, review as to the sufficiency of the evidence to support the award of compensatory damages has been waived.

### 1. *Punitive Damages*

■ Budget asserts that the "jury's award of punitive damages of $150,000, *or any amount,* was patently excessive and contrary to law in light of the facts of this case." Budget's Brief at 26 (emphasis in original).

■ In reviewing a punitive damages judgment, we consider only the probative evidence and reasonable inferences supporting it, without weighing evidence or assessing witness credibility; we affirm if a reasonable trier of fact could find such damages proven by clear and convincing evidence. *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137. Justice Prentice's analysis of punitive damages in a tort action in *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019, is a helpful starting point. Punitive damages are distinguished as those "designed to punish the wrongdoer and to dissuade him and others from similar conduct in the future." *Orkin* at 1022. Because they are awarded "in addition to" damages which compensate for the specific injury, the injured party "has already been awarded all that he is entitled to as a matter of law." *Id.* Therefore, the additional damages awarded are "a windfall, and in making that decision all thoughts of benefiting the injured party should be laid aside and the sole issues are whether or not the Defendant's conduct was so obdurate that he should be punished for the benefit of the general public." *Id.* Thus, the "evidentiary requirement" from *Travelers Indemnity Co.*

*v. Armstrong,* (1982), Ind., 442 N.E.2d 349, 362, demands any reasonable "hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other such noniniquitous human failing" be excluded. *Orkin* at 1023 (citations omitted). The evidentiary requirement was restated in *Erie Ins. Co. v. Hickman* (1993), Ind., 622 N.E.2d 515, 520: showing by:

> clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.' (Citation omitted). Thus, the mere finding by a preponderance of the evidence that the insurer committed the tort will not, standing alone, justify the imposition of punitive damages.

To review Budget's conduct against the standard, we look first to the pleadings and court instructions to identify the gravamen of the fraud litigated. According to our Trial Rules, a party must specifically aver the circumstances constituting fraud. Ind.Trial Rule 9(B). Stott's complaint refers to Budget's advertisement having "represented" the Cavalier "for sale at $4,995.00," the documents Stott signed being "represented by Defendant as a loan application," and "[f]raudulent misrepresentation" about the price of the service contract. (R. 8–9). Budget's answer included the affirmative defense of "mistake"—asserting that Stott made the first offer, with conditions; that both the Budget manager and salesman were unaware of an advertised price on the Cavalier; and that had the advertised price been applied there would have been additional charges. (R. 13).

In the preliminary instructions at trial, the court explained that Stott alleged Budget had "represented" the Cavalier's being "for sale at $4,995." (R. 35). The court instructed the jury that this described the contention "prepared and filed by" Stott. (R. 36). Final instructions to the jury define fraud and its relevant terms, specify its elements, and explain standards of proof but do not further refer to Stott's allegations of fraud.

The award to Stott of $4,041.22 compensatory damages is "all that he is entitled to as a matter of law." *Orkin, supra,* at 1022. Additional damages are warranted only if "the Defendant's conduct was so obdurate that he should be punished for the benefit of the general public." *Id.* According to the instructions of the trial court, and consistent with *Erie, supra,* and *Orkin, supra,* we therefore consider whether the evidence presented at trial showed clearly and convincingly that Budget acted with malice, oppression, willful and wanton misconduct, or gross negligence, or fraudulently regarding the price of the vehicle.

As noted in the FACTS section, no witness testified that Sayyah or any Budget personnel quoted a specific price for the Cavalier. According to Mr. Stott, "there was no price on the car," and he did not remember having discussed the price of the car while outside on the lot. (R. 338). Mrs. Stott "thought" the balance due for the Cavalier after trading in their Volare "would be $3,000." (R. 160). Likewise, Mr. Stott's understanding of the price was that "it was supposed to have been $4,995." (R. 412, 414). Neither Mr. nor Mrs. Stott explained why. Mr. Stott had no recollection about a Budget Car Sales newspaper ad. Mrs. Stott had "glanced at" an advertisement before their visit to the lot, but had not noticed a particular vehicle or price. (R. 173–74). She got a copy of the ad from the public library several months later. Mr. Stott said Sayyah told him "that he couldn't give me $3,500 on [the Volare], but he could give me $2,000." (R. 368). Mr. Stott did not say Sayyah had offered to give him $2,000 against a purchase price of $4,995.[3]

As also stated in the FACTS section, all Budget personnel deny having any knowledge that the Cavalier sold to Mr. Stott that day was being advertised for a price of $4,995. The weekly Budget ads were prepared by an advertising agency in Louisville, based upon the Indianapolis operations office computer records of the Terre Haute lot's inventory. According to the advertisement, prices in the ad "do not include dealer installed options, taxes, freight or doc fees." (R. 119). All cars on the Budget lot have had a $479 Budgetguard treatment, application of an external sealant and internal protectant. (R. 614, 1063). This would have been an add-on as a dealer installed option. The freight cost for delivery of the Cavalier to Budget was $267. (R. 611). The document fee, charged on all Budget sales, would add $69.95. The tires which Budget arranged to have installed on the Cavalier would not have been provided within the advertised price; thus, an additional $120 would be added. (R. 1024). The 5% sales tax on $4,995 would be $250. Without any trade-in, the advertised price applied to what Mr. Stott received would result in a price of $6,180.95.[4] According to the manager, who authorized the amount for any trade-in, the maximum he would have assigned to the Volare sight unseen was $100. (R. 1029). After credit for the Volare and using the advertised price, Mr. Stott would have paid $6,080.95 for the Cavalier—without any service contract. Without the service contract, what Mr. Stott paid for the Cavalier was $5,869.95. Thus, had the advertised price been used, Mr. Stott would have paid more, Budget's profit would have been greater, and the salesman's commission would have been greater.

There is no clear and convincing evidence that a reasonable man could say is inconsistent with the hypothesis of mistake on the part of Budget, or perhaps negligence for being unaware of the advertised price. *Orkin, supra,* describes the defendant against whom punitive damages are sought in a tort action as being "cloaked with the presumption that his actions, though tortious, were nevertheless noniniquitous human failings." *Orkin,* 486 N.E.2d at 1019. Applying

---

3. The Retail Sales Contract shows the 1977 Volare as part of Stott's down payment for a credit of $4,735.

4. To recap in tabular form:

| | | |
|---|---|---|
| $4,995.00 | advertised price | |
| 479.00 | Budgetgard | |
| 267.00 | freight charge | |
| 69.95 | document fee | |
| 120.00 | tires | |
| 250.00 | sales tax | |
| Total: | $6,180.95 | (without any service contract) |

this presumption, we conclude that the presumption favoring Budget:

> cannot have been overcome. This decision does not involve a weighing of the evidence but only a review, a search, a sifting to ascertain if there was any at all from which a reasonable man, employing the *clear and convincing rule,* could have found that [Budget's] conduct,

*Id.* at 1024 (emphasis in original), was willful and wanton, or that Budget acted with malice, oppression or gross negligence in representing the price of the car. Evidence that Budget "acted with ... fraud," as a "mere finding by a preponderance of the evidence that the [tortfeasor] committed the tort," cannot justify the imposition of punitive damages. *Erie, supra,* at 521. Because we find no clear and convincing evidence that Budget's actions rose to the punitive damages evidentiary standard, "the judgment is, therefore, contrary to law." *Orkin, supra,* at 1024.[5]

### 2. *Letter from Office of Attorney General*

In mid-April, 1988, the Stotts had filed a complaint with the Attorney General of Indiana, Consumer Protection Division, about their experience with Budget Car Sales. (R. 271). There was communication between the Attorney General's Office and Budget regarding the claims made by the Stotts. On three occasions during the trial Mr. Stott's counsel attempted to introduce a letter from the Attorney General's Office to Budget; each time Budget's hearsay objection was sustained. During closing arguments, Mr. Stott's counsel referred to the letter:

> They come in here and say, "Oh, this was a mistake." If it was a mistake, they didn't discover it until after the Attorney General had written them a letter telling them that their sales practices were deceptive.

(R. 1158).

■ Budget asserts that "in disregard of the court's evidentiary rulings," Mr. Stott's

counsel "unfairly and unscrupulously injected into the jury's consideration an inflammatory, prejudicial, and false description of the contents of a letter from the Indiana Attorney General's Office." Budget's Brief at 38. In accordance with *Troxel v. Otto,* (1972), 153 Ind.App. 437, 287 N.E.2d 791, Budget argues, prejudice to the adverse party is presumed where counsel refers to evidence ruled inadmissible by the court, and a new trial is required.

Stott responds that Budget failed to impose a contemporaneous objection, as Budget itself concedes. Rather, after Mr. Stott's counsel had concluded his closing argument and thanked the jury, Budget moved for a mistrial "based upon the statements made by counsel relative to a letter from the Attorney General's Office as to deceptive sales acts or practices." (R. 1161). The court held Budget's objection to the remarks "untimely made and accordingly overruled" the request for a mistrial. (R. 1163).

The contentions of both parties were addressed by this court in *Frankfort v. Owens* (1976), 171 Ind.App. 566, 358 N.E.2d 184. We reviewed the "steps necessary to preserve a point of error founded upon trial counsel's misconduct," *Id.* 358 N.E.2d at 188, noting the first step was prompt objection and request of a counteracting admonishment to the jury. We found Frankfort had failed to follow the procedures enumerated as necessary to preserve error for appeal. However, we then proceeded to consider Frankfort's argument that *Troxel v. Otto, supra,* required reversal. We responded that:

> [a]s we read *Troxel, supra,* that case holds that an attorney who repeatedly refers to matters which have been excluded from evidence by the trial court is guilty of clear misconduct with resulting prejudice to the adverse party being presumed.

*Frankfort,* 358 N.E.2d 184 (emphasis omitted). In *Troxel,* counsel made two references in his opening statement—on both of

---

5. Budget's second punitive damages challenge asserted that "evidence was insufficient as a matter of law to establish all of the elements of fraud." Budget's Brief at 45. However, following this broad statement, Budget argued only the level of proof required for one element of fraud when punitive damages are awarded. Because we have found punitive damages unwarranted, discussion of this issue is unnecessary.

which the court cautioned him, "injected" this "irrelevant fact" in a cross-examination question, and finally "hammered" the matter in final argument. *Troxel,* 287 N.E.2d at 792. In the case at bar, we have only the reference quoted above during the closing statement of Mr. Stott's counsel. *Troxel 's* itemization of each occurrence, its language about counsel's persistence, the repeated rulings of the court, counsel's "recurrent references" and "repeated remarks" distinguish its facts from those before us. *Id.* at 793.

As we concluded in *Frankfort,* "the record before us does not disclose such blatant misconduct as appeared in *Troxel,*" *Frankfort,* 358 N.E.2d at 184. Nevertheless, we are concerned about the potential prejudicial effect of counsel's reference to a letter from the Attorney General—which is not in evidence—purportedly saying Budget's sales practices were deceptive. We note the jury was instructed that punitive damages "punish the defendant and . . . deter him and others from like conduct in the future." (R. 69). We conclude that the prejudice resulting from the reference almost certainly appears in the jury's award of $150,000 punitive damages. Because we have reversed the punitive damages award, we do not believe a new trial is necessary.

### 3. *Evidence of Car Condition and Service Contract Performance*

Budget's final claim of error asserts the improper admission of evidence of the condition of the car and performance of the service contract, inasmuch as these issues were not raised in Mr. Stott's complaint.

Budget provides no authority for its contention that the admission of this evidence warrants a reversal and new trial. Accordingly, Budget has waived this issue. Ind.Appellate Rule 8.3(A)(7); *Kolley v. Harris* (1990), Ind.App., 553 N.E.2d 164.

---

**6.** There is a difference between actual and constructive fraud. Actual fraud requires proof of an intent to misrepresent, whereas constructive fraud, as noted by Judge Sullivan requires only proof of reckless ignorance. Constructive fraud is a form of negligence which will not always merit punitive damages. The case relied upon by Judge Sullivan, *Block v. Lake Mortgage Co.*

*CONCLUSION*

The judgment for compensatory damages is affirmed; the judgment of punitive damages is reversed. The cause is remanded and the trial court instructed to vacate the judgment for punitive damages.

CHEZEM, J., concurs in result and dissents with separate opinion.

SULLIVAN, J., concurs in part and dissents in part with separate opinion.

CHEZEM, Judge, concurring in result and dissenting.

I concur in result with the Majority as to the award of compensatory damages. I dissent to the reversal of the punitive damages. Budget raised the issue of whether the evidence was sufficient to clearly and convincingly establish all of the elements of *actual*[6] fraud, which serves as an underlying challenge to the awards of compensatory and punitive damages. However, the Majority construes this to mean Budget Car has waived the issue of whether there was sufficient evidence to support the award of compensatory damages. To the extent the Majority is willing to recognize an award of compensatory damages, it recognizes the cause upon which those damages are based: actual fraud. Actual fraud is actual fraud and any finding thereof supports the trier's of fact decision to award compensatory or punitive damages.

In other words, either there was actual fraud or there was not actual fraud. The award of compensatory damages, upheld by the Majority, is dispositive of the issue of whether actual fraud was proved. Had actual fraud not been proved, there would be no compensatory damages. Because actual fraud was proved, we must next determine whether the award of punitive damages was correct. The standard for awarding punitive

---

(1992), Ind.App., 601 N.E.2d 449, *reh. denied,* does not deal with punitive damages. Rather, the court in that case distinguished between actual and constructive fraud, supporting the contention that proof of actual fraud is achieved through a higher degree of proof because intent of the actor is at issue.

damages for the commission of a tort remains unchanged:

> Punitive damages may be awarded only if there is clear and convincing evidence that the defendant 'acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing, in the sum [that the jury believes] will serve to punish the defendant and to deter it and others from the like conduct in the future.'

*Erie Ins. Co. v. Hickman by Smith* (1993), Ind., 622 N.E.2d 515, 520 (citing *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 137–138).

I disagree that when the underlying tort of actual fraud has been proved, a different standard of review is ultimately applied in determining whether to allow for punitive damages. Our supreme court, in examining the application of punitive damages to the tort of an insurer's breach of its duty of good faith, applied a different standard of proof required to obtain punitive damages: "Thus, the mere finding by a preponderance of the evidence that the insurer committed the tort will not, standing alone, justify the imposition of punitive damages."[7] *Id.*

Actual fraud is a unique tort in terms of punitive damages because the requisites for use of the "clear and convincing" standard must have been met in obtaining a judgment of fraud in the first place. One cannot commit actual fraud without the intent to injure another. Whereas, with breach of a duty of good faith (*Erie Ins. Co.*), negligence (*Orkin*), breach of contract (*Seibert v. Mock* (1987), Ind.App., 510 N.E.2d 1373),[8] or any other tort that may invoke the application of punitive damages, the presumption created by the "clear and convincing" standard may not have been overcome in proving the underlying tort because the intent of the actor is not at issue.

Our supreme court discussed the origin of the "clear and convincing" standard in the context of civil litigation:

> [W]e established the "clear and convincing evidence" standard for application in the trial of punitive damages claims, a standard which is but minutely below the "reasonable doubt" standard, because such actions are more akin to criminal actions than to civil suits, there being a presumption that the defendant's conduct that gave rise to the underlying claim and entitlement to compensatory damages was not inflicted with the obduracy relied upon by the plaintiff to sustain his claim that the defendant, *in the public interest*, should be penalized.

*Orkin Ext. Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019, 1022–23 (emphasis in original).

The conduct in *Orkin* was negligence and punitive damages were denied because the negligent conduct was not clearly and convincingly intentional or obdurate. Unlike the tort of actual fraud, it is possible to be unintentionally negligent. Our supreme court in *Erie* did not have to address whether an insurer's duty of good faith can be unintentionally, nonmaliciously, nonfraudulently, or nonoppressively violated because it held under the facts of that case that, although there was a duty of good faith, it had not been violated.

In terms of the punitive damage judgment, the presumption created in favor of Budget with the clear and convincing standard is that Budget's conduct was not the result of mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing. However, when the elements of actual fraud have been proved, by definition, those presumptions created by

---

7. Judge Sullivan relies on the *Erie* case in support of his position that punitive damages are not justified in every situation of actual fraud. However, the underlying tort in *Erie* was not actual fraud, but breach of a good faith duty.

8. Judge Sullivan relies on the case of *Seibert v. Mock* in support of his proposition that "the burden to establish entitlement to punitive damages is more onerous than the burden to prove compensable fraud." However, this case was for breach of contract. Fraud was not the issue on appeal. The footnote upon which Judge Sullivan relies falls below the level of dicta. Moreover, we cannot determine from the facts in this case whether it was actual or constructive fraud at issue before the trier of fact.

use of the "clear and convincing" standard have already been overcome. "Mistake" is a defense to fraud which was asserted by Budget and rejected by the jury. Budget asserted none of the other above defenses to fraud, which also serve as the basis of a favorable presumption in determining whether to award punitive damages.

I agree with our supreme court when it relied on Justice Prentice's words:

"Clear and convincing" evidence, a stricter degree of proof than a mere preponderance of the evidence is required in some jurisdictions with respect to such issues as fraud, specific performance, forfeiture, etc.

In ordinary civil actions a fact in issue is ... sufficiently proved by a preponderance of evidence. However, clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals to prove willful, wrongful and unlawful acts to justify an exceptional judicial remedy....

So, in a number of cases where an adverse presumption is to be overcome, or on the grounds of public policy and in view of peculiar facilities for perpetrating injustice by fraud or perjury, the degree of proof required is expressed in such terms as 'clear,' 'clear and conclusive,' 'clear precise and indubitable,' 'convincing,' 'clear and convincing,' 'satisfactory,' 'entirely satisfactory,' 'strong,' 'clear, strong and convincing,' 'clear, distinct and convincing,' 'clear, positive and credible,' and 'unequivocal,' and *the phrase 'preponderance of evidence' has been expressly disapproved as an insufficient measure of the proof required,* as has also the phrase, 'a fair preponderance of the evidence.'

*Estate of Reasor v. Putnam County* (1994), Ind., 635 N.E.2d 153 (citing *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 360–61 (emphasis in the original) (citations omitted)).

The issue in *Reasor* was reformation, based on mutual mistake and fraud. Our

supreme court recognized that when intent is at issue, proof must be established by clear and convincing evidence. If we are to affirm the judgment in relation to compensatory damages, we are affirming the trier's of fact determination that fraud has been proved with clear and convincing evidence. It is only this standard which can truly prove whether there was the requisite intent necessary to sustain a judgment of fraud.

The Majority reweighs the evidence and credibility of witness testimony in arriving at its conclusion that there is no clear and convincing evidence that Budget's conduct was malicious, fraudulent, grossly negligent, or oppressive. Only one of these requisites must be found to justify an imposition of punitive damages because of the use of the conjunction "or" and also because being "grossly negligent" by definition excludes the others. Malice, fraud, and oppressive conduct all require proof of the actor's intent. By allowing Budget the presumption of those defenses for purposes of punitive damages, we call in to question the jury's finding of actual fraud as the underlying tort. Therefore, proof of the elements of fraud inherently *a priori* rebuts any presumption created by the "clear and convincing" standard in arriving at an award of punitive damages.

Albeit, punitive damages are not awarded as a matter of course under Indiana law. Such damages are intended to punish and deter wrongdoers rather than compensate those who have been wronged. The analysis ultimately turns on the actor's state of mind: whether a defendant knew of but consciously disregarded the likely injurious consequences of his course of conduct. Likewise, in *Bud Wolf Chevrolet,* a case involving the issue of actual fraud and punitive damages, our supreme court upheld the jury's finding of clear and convincing evidence in favor of punitive damages. A two-step process was used: (1) whether there was conduct, *though not malicious,* which constituted fraud, gross negligence or oppressiveness, and (2) whether the conduct was inconsistent with any contention of mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or other such noniniquitous human failing. *Bud Wolf Chevrolet,* 519 N.E.2d at 137.

There appear to be no cases which support a claim of actual fraud, while simultaneously rejecting sought-after punitive damages. In this respect we are presented with a case of first impression in Indiana. We discussed punitive damages in the context of actual fraud in the case of *Martin Chevrolet Sales, Inc. v. Dover* (1986), Ind.App., 501 N.E.2d 1122. We held that "[p]unitive damages may not be allowed upon evidence that is merely consistent with a hypothesis of fraud." We erroneously relied on two cases in support of that proposition: *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349 and *Orkin*, 486 N.E.2d 1019. Our supreme court in *Travelers* did not have to decide whether to deny punitive damages because it held there was insufficient evidence to support the complaint of actual fraud. And, as previously mentioned, the issue in *Orkin* was punitive damages in the context of negligence. Moreover, the punitive damage award in *Martin* was reversed due to improper jury instruction, and not due to use of a higher evidentiary standard on the underlying claim of actual fraud.

Actual fraud, by its very nature, is conduct that, in the public interest, justifies penalty. I agree that "it is better to exonerate a wrongdoer from punitive damages, even though his wrong be gross or wicked, than to award them at the expense of one whose error was one that society can tolerate and who has already compensated the victim of his error." *Orkin*, 486 N.E.2d at 1023. However, actual fraud, unlike other torts which can be inflicted unintentionally or non-maliciously, is not conduct that society can tolerate.

When actual fraud has been proved, the trier of fact is free to, but is not required to, impose, punitive damages without further evidentiary burden. It is for that reason that I would uphold the jury's finding of actual fraud with a damage award of compensatory and punitive damages.

SULLIVAN, Judge, concurring in part and dissenting in part.

While I agree that the punitive damage award must be reversed as contrary to law, I respectfully dissent from that portion of the opinion which affirms the compensatory damage award.

At the outset I would express disagreement with the conclusion that Budget has waived any challenge to the fraud judgment. Notwithstanding some seeming inconsistent statements in its brief, Budget clearly attacks the damage award for common law fraud. The brief asserts that even though the jury might arguably have concluded that Budget did, in fact, make certain misrepresentations, Stott was not justified in relying upon those representations. Reliance is very much a factor in any recovery for fraud. It is an essential element of the right of recovery, upon which plaintiff bears the burden of proof. *Scott v. Bodor, Inc.* (1991) 5th Dist. Ind.App., 571 N.E.2d 313. Whether the plaintiff did in fact rely upon the misrepresentations made and whether such reliance was reasonable and justified are questions of fact for resolution by the jury. *Biberstine v. New York Blower Co.* (1993) 5th Dist.Ind. App., 625 N.E.2d 1308. However, as stated in *Biberstine:*

"[W]here the evidence is so clear as to be susceptible of only one inference, it is for the court to determine as a matter of law whether plaintiff was justified in relying on the representation (Citations omitted). When confronted with representations which are 'simply not the stuff that fraud is made of,' this court may find as a matter of law either that the representations are not actionable or that the plaintiff had no right to rely as a matter of law." 625 N.E.2d at 1316.

In the case before us, the newspaper advertisement offering the car at a price less than the $5800 purchase price agreed upon, was not even known to the Stotts until days after the sale had been fully consummated. There was, in fact, no reliance at all, whether justified or otherwise. See *Weber v. Costin* (1995) 1st Dist.Ind.App., 654 N.E.2d 1130 (ordered published August 17, 1995). The purchase price and trade-in was negotiated and agreed upon. I would find that, as a matter of law, there was no representation made by Budget upon which Stott justifiably and detrimentally relied. See *Gardner v.*

*McClusky* (1995) 5th Dist.Ind.App., 647 N.E.2d 1.

Additionally, I would note that another essential element in establishing a civil fraud action is wholly absent. Even assuming that Budget's sales people were neglectful in not knowing that the car had been advertised at a lower price, there is absolutely no evidence that they did in fact know of the advertisement. Accordingly, there was no evidence that a misrepresentation by silence, if any, as to the true purchase price, was made with the intent to deceive the Stotts. Such intent to deceive is essential to actual fraud. *See Sanders v. Townsend* (1987) 2d Dist.Ind. App., 509 N.E.2d 860, 865, *trans. denied.*

The factual analysis made in Judge Darden's opinion with respect to punitive damages leads to my conclusion that Stott not only failed to prove entitlement to such damages but also failed to establish actual fraud. However, I respectfully disagree with the position taken in Judge Chezem's dissent. It is her view that if fraud has been established to the satisfaction of the trier of fact, ergo, the plaintiff is also entitled to punitive damages. I believe this erroneously equates the two concepts. To be sure, in many, if not most cases in which fraud has been established, the trier of fact is warranted in also awarding punitive damages. *See, e.g., Capitol Dodge, Inc. v. Haley* (1972) 2d Dist., 154 Ind.App. 1, 288 N.E.2d 766. Nevertheless, not every fraud resulting in justified and detrimental reliance is infected with the degree of malice or oppressiveness necessary for punitive damages. *Erie Insurance Co. v. Hickman* (1993) Ind., 622 N.E.2d 515.[9] Furthermore, the burden to establish entitlement to punitive damages is more onerous than the burden to prove compensable fraud. *Seibert v. Mock* (1987) 4th Dist.Ind.App., 510 N.E.2d 1373. One must prove the right to punitive damages by clear and convincing evidence. *Hickman, supra* at 520. Thus, it is clear that a plaintiff may carry the burden of proving common law fraud by the necessary preponderance but not adduce such clear and convincing evidence as to warrant punitive damages. Judge Chezem's dissent, mistakenly I believe, assumes that a "clear and convincing" burden exists to prove common law fraud. Although *Estate of Reasor v. Putnam County* (1994) Ind., 635 N.E.2d 153, carries such an implication, no Indiana Supreme Court case has so held. The principle is not an open invitation to reweigh evidence; nor in acknowledging the difference between proof of fraud and proof of punitive damages, are we reweighing the evidence in this case as Judge Chezem's dissent suggests. Suffice it to say that even if I were to agree with Judge Chezem's "all or nothing" analysis, my conclusion remains that in this case, the plaintiff is entitled to recover no damages, compensatory or punitive.

Even were I to agree with Judge Darden that there was sufficient evidence of actual fraud to justify submission of the question to the jury, I could not vote to affirm the judgment.

In this case, plaintiff's trial counsel repeatedly attempted to introduce a letter from the Attorney General dealing with Budget's sales practices. On each occasion, the defendant's objection to the admission as evidence was sustained. Nevertheless, plaintiff's counsel injected the contents of the letter into the proceedings during final argument.

The facts before us are more analogous to those of *Troxel v. Otto* (1972) 153 Ind.App. 437, 287 N.E.2d 791, than to *Frankfort v. Owens* (1976) 171 Ind.App. 566, 358 N.E.2d 184. In *Frankfort,* the comments by counsel were wholly unrelated to the issues in litigation and were an obvious attempt to inject a degree of levity at the expense of opposing counsel. This court held that the remarks,

---

9. Actual fraud may be found to exist if the representation is made with reckless ignorance. The malice required of a successful punitive damage claim is not necessary. *Block v. Lake Mortgage Co.* (1992) 3d Dist.Ind.App., 601 N.E.2d 449. Judge Chezem's dissent mistakenly suggests that reckless ignorance of falsity may suffice to establish constructive fraud, but to prove actual fraud, *Block, supra,* clearly states to the contrary. One might argue that it is inconsistent to state that intent to deceive is essential to establish actual fraud but that reckless ignorance as to falsity will suffice. On the other hand, it may be that proof of reckless ignorance will permit an inference of intent to deceive. 37 *Am.Jur.2d Fraud and Deceit* § 446 (1968 & Supp.1995). It is unnecessary for us to resolve that question, however.

"although unfortunate, do not require a reversal of this cause." 358 N.E.2d at 188. Although the court stated as a reason for the holding that plaintiff had failed to move for mistrial or to admonish the jury, it is extremely unlikely that such objection or motion, if overruled, would have resulted in reversal given the nature of the comments made by counsel and the extreme unlikelihood of any impact upon the jury. On the other hand, in *Troxel, supra,* the repeated references were to the inadmissible and clearly prejudicial fact that defendant's subsequent death in a similar occurrence was "one more instance of her not looking." 287 N.E.2d at 792.

Here, as in *Troxel,* the reference to the letter was not a mere inadvertence. Given the posture of our case, in light of the evidence, it is extremely probable, as in *Troxel,* "that the impropriety of counsel here influenced the jury's verdict". 287 N.E.2d at 794. That prejudicial impact was visited not only upon the decision to award punitive damages, but, I believe, upon the determination to award compensatory damages for fraud. If, therefore, I am in error as to whether plaintiff was entitled to have the jury determine the issue of fraud, the determination should not be tainted by the inappropriate and prejudicial remarks of trial counsel. In that alternative scenario, the matter of common law fraud and compensatory damages should be retried.

It is my view, however, that the judgment of the trial court should be reversed in all things and that judgment should be entered for defendant.